**Case No. 22-10480**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

IRISH JENKINS

Appellant

v.

KOCH FOODS, INC., et al.

Appellees

Appeal from the United States District Court
for the Middle District of Alabama
Northern Division
Case No. 2:17-cv-00364-RAH-JTA

_____

**BRIEF OF THE APPELLEES
KOCH FOODS OF ALABAMA, LLC
and KOCH FOODS, INC.,**

_____

Rachel V. Barlotta
Sharonda C. Fancher
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
1400 Shipt Tower
420 North 20th Street
Birmingham, Alabama  35203
205-328-0480
rbarlotta@bakerdonelson.com
sfancher@bakerdonelson.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, the undersigned counsel for Koch Foods, Inc., and Koch Foods of Alabama, LLC, certify there are no parents, subsidiaries and/or affiliates of said parties that have issued shares or debt securities to the public.

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Adams, Hon. Jerusha A.

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

Barlotta, Rachel V.

Birchfield, David

Baker, Hon. David A.

Brasher, Hon. Andrew

Fancher, Sharonda Childs

Fisher Phillips

Guerrier, Charles E.

Haynes, Alicia K.

Haynes & Haynes, P.C.

Heather Leonard, P.C.

Huffaker, Hon. Robert A.

Jenkins, Irish

Koch Foods, Inc.

Koch Foods of Alabama, LLC

Leonard, Heather E.

McDickinson, Melissa

Walker, Marion

Wilkinson, Cynthia

Wilkinson Law Firm PC

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is not needed in this case. The facts and legal arguments are adequately presented in the briefs and record. The decisional process would not be significantly aided by oral argument. However, if this Court believes that oral argument would be beneficial to the resolution of this appeal, Appellees welcome the opportunity to present oral argument and to further demonstrate that the district court's decision in its favor was correct and is due to be affirmed.

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ......................................................... **C-1**

**CERTIFICATE OF INTERESTED PERSONS** ...................................................... **C-2**

**STATEMENT REGARDING ORAL ARGUMENT** ............................................. **I**

**TABLE OF CONTENTS** ........................................................................................ **II**

**TABLE OF AUTHORITIES** ................................................................................ **IV**

**STATEMENT REGARDING ADOPTION**
  **OF BRIEFS OF OTHER PARTIES** ..................................................................... **1**

**STATEMENT OF THE ISSUES** ........................................................................... **2**

**STATEMENT OF THE CASE** ................................................................................ **5**

    I.    Proceedings and Dispositions in the District Court ............................. 5

    II.    Statement of the Facts ....................................................................... 6

        A.    Ala-Koch's Efforts to Comply With
            Anti-Discrimination Laws. ....................................................... 6

        B.    Jenkins' Employment at Ala-Koch. ......................................... 8

        C.    Jenkins' Misconduct and Denials of
            Relationship with McDickinson. .............................................. 9

        D.    Jenkins' Termination ............................................................... 15

        E.    Jenkins' Consensual Relationship with McDickinson
            and the EEOC's Investigation and Dismissal. .......................... 18

    III.    Standards of Review .......................................................................... 20

**SUMMARY OF ARGUMENT** ............................................................................. **21**

**ARGUMENT** ........................................................................................................... **22**

    I.    The District Court Correctly Granted Summary Judgment
        On Jenkins' Title VII Sex Discrimination Claim. ........................... 22

        A.    Jenkins Failed to Show The Alleged Conduct
            Was Unwelcome. ...................................................................... 22

        B.    The District Court Correctly Determined the
            Alleged Conduct Was Not Severe or Pervasive. ...................... 26

C.    The District Court Correctly Determined Jenkins Failed to Show the Harassment Culminated in His Termination. ...................................................28

D.    Jenkins Failed to Show The Alleged Conduct Was Based On His Gender. .......................................38

II.    The District Court Correctly Granted Summary Judgment on Race Discrimination Claims.........................42

A.    Jenkins Abandoned His Race Claims. ......................42

B.    Race-Plus and Mixed Motive Claims Are Not Actionable under § 1981..................................43

C.    Jenkins Failed To Exhaust His Administrative Remedies. .................................................................44

D.    The District Court Applied the Correct Standard to Jenkins' Race Claims...........................................45

E.    Jenkins Failed to Show He Was Subjected to a Racially Hostile Work Environment.........................46

F.    Koch Foods Is Not Liable for a Racially Hostile Work Environment................................................48

III.    The District Court Correctly Granted Summary Judgment on Jenkins' Tort Claims....................................49

A.    Jenkins Has Waived His Tort Claims on Appeal. ...................49

B.    Jenkins Failed to Create an Issue of Fact As To His Tort Claims. ...............................................49

IV.    Summary Judgement Should Be Affirmed for Koch On The Alternate Ground That It Was Not Jenkins' Employer. .............54

A.    Jenkins Abandoned His §1981 and Tort Claims Against Koch.............................................................54

B.    Jenkins Failed To Demonstrate Koch Was a Joint or Single Employer with Koch Foods of Alabama for Title VII Liability................................54

CONCLUSION...............................................................................57

CERTIFICATE OF COMPLIANCE ..........................................59

CERTIFICATE OF SERVICE ....................................................60

iii

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfa Mut. Ins. Co. v. Roush*,
   723 So.2d 1250 (Ala. 1998) ...................................................................51

*Anderson v. City of Bessemer*,
   470 U.S. 564 (1985) ...............................................................................31

*Baldwin v. Blue Cross/Blue Shield of Alabama*,
   480 F.3d 1287 (11th Cir. 2007)...................................................... 36, 38

*Barfield v. Orange County*,
   911 F.2d 644(11th Cir. 1990) ................................................................24

*Barlow v. Piggly Wiggly Alabama Distrib. Co.*,
   No. 2:14-CV-971-WMA, 2015 WL 5770625 (N.D. Ala. Oct. 2, 2015).............50

*Bostock v. Clayton County, Georgia*,
   140 S. Ct. 1731 (2020)................................................................... 39, 41

*Brackin v. Anson*,
   585 Fed. Appx. 991 (11th Cir. 2014) .....................................................42

*Brown v. Henderson*,
   115 F. Supp. 2d 445 (S.D.N.Y. 2000) ....................................................41

*Bryant v. Jones*,
   575 F.3d 1281 (11th Cir. 2009)..............................................................29

*Burlington Industries, Inc. v. Ellerth*,
   524 U.S. 742, 765 (1998) ............................................................... 36, 48

*Clark County School District v. Breeden*,
   532 U.S. 268 (2001) ...............................................................................33

*Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*,
   219 F.3d 1301 (11th Cir. 2000) .............................................................54

iv

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  2020 WL 1325816 ...................................................................44

*Cooke v. Stefanie Mgmt. Servs., Inc.*,
  250 F.3d 564 (11th Cir. 2001) ........................................... 24, 25

*Cotton v. Cracker Barrel Old Country Store, Inc.*,
  434 F.3d 1227 (11th Cir. 2006) ...............................................28

*Craig v. Yale Univ. Sch. of Med.*,
  2013 U.S. Dist. LEXIS 29369, at *31 (D. Conn. March 4, 2013) ......................44

*Criswell v. Intellirisk Mgmt. Corp.*,
  286 F. App'x 660 (11th Cir. 2008)...........................................33

*Crutcher-Sanchez v. County of Dakota*,
  687 F.3d 979 (8th Cir. 2012) ...................................... 24, 25, 26

*EEOC v. Harbert-Yeargin, Inc.*,
  266 F.2d 498 (6th Cir. 2001) ...................................................41

*Ex parte Atmore Cmty. Hosp.*,
  719 So. 2d 1190 (Ala. 1998) ...................................................50

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ...............................................................48

*Fike v. Gold Kist, Inc.*,
  514 F. Supp. 722 (N.D. Ala. 1981) .........................................55

*Flying J Fish Farm v. Peoples Bank*,
  12 So. 3d 1185 (Ala. 2008) ....................................................52

*Gitlitz v. Compagnie Nationale Air France*,
  129 F. 3d 554 (11th Cir. 1997)...............................................20

*Gregory v. Ga. Dep't of Human*,
  *Res.*, 355 F.3d 1277 (11th Cir. 2004) ...................................45

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) .......................................................... 26, 47

*Henson v. City of Dundee,*
  682 F.2d 897 (11th Cir. 1982) ........................................................ 22, 39

*Higdon v. Jackson,*
  393 F.3d 1211 (11th Cir. 2004) .............................................................33

*Holman v. Indiana,*
  211 F.3d 399 (7th Cir. 2000) ......................................................... 40, 41

*Jackson v. Alabama Dep't of Corr.,*
  643 F. App'x 889 (11th Cir. 2016) .......................................................36

*Johnson v. Brunswick Riverview Club, Inc.,*
  39 So.3d 132 (Ala. 2009) .....................................................................52

*Jones Exp., Inc. v. Jackson,*
  86 So. 3d 298 (Ala. 2010) ...................................................................52

*Joyner v. AAA Cooper Transp,*
  477 So. 2d 364 (Ala. 1985) ................................................................50

*Kesinger ex rel. Estate of Kesinger v. Herrington,*
  381 F.3d 1243 (11th Cir. 2004) ...........................................................31

*Klein v. L-3 Commc'ns Corp.,*
  No. 1:12-CV-956-MEF, 2013 WL 5913776 (M.D. Ala. Nov. 1, 2013) ..............56

*Lack v. Wal-Mart Stores, Inc.,*
  240 F.3d 255 (4th Cir. 2001) ..............................................................39

*Latrece Lockett v. Choice Hotels Int'l,*
  315 F. App'x 862 (11th Cir. 2009) ......................................................26

*Llampallas v. Mini-Circuits, Lab, Inc.,*
  163 F.3d 1236, 1244-45 (11th Cir. 1998) ....................................... 28, 54

*Lowe v. Cardinal Health Inc.,*
  6 61 F. Su 3d 1228, 1242–43 (N.D. Ala. 2014) ..................................53

*Lusk v. Foxmeyer Health Corp.,*
  129 F.3d 773 (5th Cir. 1997) ........................................................ 55, 57

*Lyes v. City of Riviera Beach*,
    166 F.3d 1332 (11th Cir. 1999) ............................................................54

*Mardis v. Robbins Tire & Rubber Co.*,
    669 So.2d 885 (Ala. 1995) ...................................................................50

*McCollum v. Bolger*,
    794 F.2d 602 (11th Cir. 1986) ..............................................................33

*McKenzie v. Davenport-Harris Funeral Home*,
    834 f.2d 930 (11th Cir. 1987) ...............................................................55

*Menaker v. Hofstra Univ.*,
    935 F.3d 20 (2d Cir. 2019) ...................................................................41

*Mendoza v. Borden, Inc.*,
    195 F.3d 1238 (11th Cir.1999) ...................................................... 27, 38

*Miller v. Kenworth of Dothan, Inc.*,
    277 F.3d 1269 (11th Cir. 2002) .............................................................46

*Mills* v. Wex-Tex Industs., Inc.,
    991 F. Supp 1370 (M.D. Ala 1997) .......................................................50

*Moore v. Shands Healthcare, Inc.*,
    617 F. App'x 924 (11th Cir. 2015) ........................................................27

*Murdoch v. Medjet Assistance, LLC*,
    294 F. Supp. 3d 1242 (N.D. Ala. 2018) ................................................23

*Nesbit v. Gears Unlimited, Inc.*,
    347 F.3d 72 (3d Cir. 2002) ...................................................................55

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ...............................................................................38

*Pasqua v. Metropolitan Life Ins. Co.*,
    101 F.3d 514 (7th Cir.1996) .................................................................40

*Peppers v. Cobb Cnty.*,
    835 F.3d 1289 (11th Cir. 2016) ............................................................54

*Pipkins v. City of Temple Terrace, Fla.*,
  267 F.3d 1197 (11th Cir. 2001) ................................................................... 33, 34

*Potts v. BE & K Const. Co.*,
  604 So.2d 398 (Ala. 1992) ....................................................................... 49, 50, 53

*Resolution Trust Corp. v. Dunmar Corp.*,
  43 F.3d 587 (11th Cir.1995) ............................................................................42

*Rowell v. BellSouth Corp.*,
  433 F. 3d 794 (11th Cir. 2005) ........................................................................20

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) ........................................................................49

*Savage v. Temple Univ. - of Commonwealth Sys. of Higher Educ.*,
  No. CV 19-6026-KSM, 2022 WL 911153 (E.D. Pa. Mar. 29, 2022) .................43

*Schweitzer v. Advanced Telemarketing Corp.*,
  104 F.3d 761 (5th Cir. 1997) ...........................................................................56

*Seshadri v. Kasraian*,
  130 F.3d 798 (7th Cir. 1997) ...........................................................................31

*Smith v. Universal Servs. Inc.*,
  454 F.2d 154 (5th Cir. 1972) ...........................................................................24

*Speigner v. Shoal Creek Drummond Mine*,
  402 F. App'x 428 (11th Cir. 2010) ....................................................................52

*Stancombe v. New Process Steel LP*,
  652 F. App'x 740 (11th Cir. 2016) ...................................................................49

*Stevenson v. Precision Standard, Inc.*,
  762 So. 2d 820 (Ala. 1999) ..................................................................... 51, 52, 53

*Succar v. Dade County School Board*,
  229 F.3d 1343 (11th Cir. 2000) ........................................................................34

*Towns v. Directors Guild of Am., Inc.*,
  No. 21-12044, 2022 WL 169017 (11th Cir. Jan. 19, 2022) ...............................29

*Univ. Fed. Credit Union v. Grayson,*
  878 So. 2d 280 (Ala. 2003) ...................................................................52

*Varner v. Video Indus. Servs.*,
  2012 U.S. Dist. LEXIS 196855, *24 (N.D. Ala. April 2, 2012) ..........................55

*Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs.*,
  512 F. 3d 1296 (11th Cir. 2008) ............................................................20

*Vinson v. Meritor Sav. Bank*,
  477 U.S. 57 (1986) ................................................................ 22, 24, 26

*Walker v. Boys and Girls Club of Am.*,
  38 F. Supp. 2d 1326 (M.D. Ala. 1999)......................................................56

*Waltz v. Dunning*,
  No. 2:13-CV-00517-JEO, 2014 WL 7409725 (N.D. Ala. Dec. 31, 2014) ..........23

*Zarate v. U.S. Attorney Gen.*,
  307 F. App'x 289 (11th Cir. 2009) .......................................................42

*Ziyadat v. Diamondrock Hosp. Co.*,
  3 F.4th 1291 (11th Cir. 2021)............................................................44

**STATUTES**

42 U.S.C. § 1981 .......................................................................44

**RULES**

Rule 28(i) of the Federal Rules of Appellate Procedure............................................1

## <u>STATEMENT REGARDING ADOPTION</u>
## <u>OF BRIEFS OF OTHER PARTIES</u>

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, Koch Foods of Alabama, LLC and Koch Foods, Inc., expressly adopt the portions of Appellee Melissa McDickinson's brief regarding Irish Jenkins' failure to establish a prima facie case of assault and battery, invasion of privacy, and intentional infliction of emotional distress. Appellees also adopt Appellant's Statement of Jurisdiction.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly granted summary judgment on Jenkins' tangible employment action sex discrimination claim as he failed to show the alleged conduct was unwelcome when he admittedly enjoyed and voluntarily participated in the consensual relationship.

2.    Whether the district court correctly granted summary judgment on Jenkins' tangible employment action sex discrimination claim as he failed to show the purported harassment culminated in his termination when he failed to present evidence that either purported harasser made the decision to terminate his employment.

3.    Whether summary judgment on Jenkins' tangible employment action sex discrimination claim is due to be affirmed on the alternate ground that Jenkins failed to show the alleged conduct was based on his gender as he alleges the harassers sexually pursued female employees.

4.    Whether the district court properly granted summary judgment on Jenkins' race discrimination claims as he abandoned the claims at summary judgment by failing to respond to Koch Foods' arguments?

5.    Whether the district court properly granted summary judgment on Jenkins' race discrimination claims as he failed to show his termination was based on his race when he could identify no comparators outside of his protected class

who received more favorable treatment or other evidence to suggest his race was a factor in any adverse action.

6.      Whether the district court properly granted summary judgment on Jenkins' race discrimination claims as he failed to show the alleged conduct rose to the level of a racially hostile work environment.

7.      Whether summary judgment is due to be affirmed on Jenkins' § 1981 race discrimination claim on the alternate ground that no cause of action for race-plus-sex claim exists under the statute?

8.      Whether summary judgment is due to be affirmed on Jenkins' Title VII race discrimination claim on the alternate ground that Jenkins failed to exhaust his administrative remedies?

9.      Whether Jenkins abandoned his state law claims by raising them on appeal in a cursory manner?

10.      Whether the district court properly granted summary judgment on Jenkins' state law claims as he failed to establish the elements of his claims and failed to show either purported harasser was acting with the line or scope of their employment or that Koch Foods ratified the alleged conduct?

11.      Whether summary judgment is due to be affirmed in favor of Koch Foods, Inc., on the alternate ground that Jenkins abandoned his tort claims and his

§ 1981 claim and that he failed to show Koch was liable for his Title VII claims under a joint or single employer theory?

## STATEMENT OF THE CASE

**I.    Proceedings and Dispositions in the District Court**

Irish Jenkins ("Jenkins") contends that Koch Foods, Inc., ("Koch") and Koch Foods of Alabama, LLC ("Ala-Koch") (collectively "Koch Foods") discriminated against him based on his gender and race. He also contends that Melissa McDickinson, a former Ala-Koch employee, committed tortious conduct against him and that Ala-Koch is vicariously liable for her conduct. On June 5, 2017, Jenkins filed his Complaint against Koch, Ala-Koch, McDickinson and David Birchfield.  Jenkins alleged he was subjected to discrimination based on his gender and race in connection with his pay and his discharge in violation of Title VII and § 1981; retaliation; assault and battery; invasion of privacy; intentional infliction of emotional distress; and wanton and negligent training, supervision and retention. (Doc. 1).   On June 30, 2017, Koch Foods moved to dismiss Jenkin's Title VII and § 1981 race discrimination and racial harassment claims. (Doc. 12). On December 27, 2017, Magistrate Judge Baker issued a Report and Recommendation that Koch Foods' motion to dismiss be granted as to Jenkins' discriminatory pay claims. (Doc. 43). On February 5, 2018, the district court adopted the magistrate judge's report and recommendation (Doc. 48).

 On August 3, 2020, Koch Foods filed a motion for summary judgment as to Jenkins' remaining claims. (Docs. 179-182). On September 8 and 9, 2020, Jenkins

filed his opposition to Koch Foods' summary judgment motions. (Docs. 193, 194). On September 22, 2020, Koch Foods filed its reply briefs (Doc. 195, 199) and objections to the inadmissible portions of Jenkins' evidentiary submission. (Doc. 198). On January 14, 2022, the district court granted Koch Foods' motion for summary judgment as to all of Jenkins' claims. (Doc. 222). The district court denied as moot Koch Foods' objections and motion to exclude portions of Jenkins' evidentiary submission. (*Id.*).

On February 11, 2022, Jenkins filed a notice of appeal. (Doc. 226). Jenkins appeals the district court's grant of summary judgment in favor of Koch Foods on Jenkins' sex and race discrimination claims and the district court's grant of summary judgment in favor of McDickinson and Koch Foods on his tort claims. Jenkins does not appeal summary judgment as to any claim against Birchfield, his retaliation claims asserted against Koch Foods, or the dismissal of his pay discrimination claims.

## II.    Statement of the Facts

### A.    Ala-Koch's Efforts to Comply With Anti-Discrimination Laws.

Ala-Koch is a chicken processing facility in Montgomery, Alabama. Ala-Koch maintains an Equal Employment Opportunity and Harassment Policy, which prohibits harassment and discrimination on the basis of race or sex. (Jenkins Acknowledgements of Ala-Koch's Anti-harassment Policy, Doc. 182-1). The

policy provides multiple reporting avenues for anyone who believes unlawful discrimination or harassment has occurred. (*Id.;* Deposition of Irish Jenkins, Doc. 182-2, p. 17, 55:12-56:3. p. 58, 220:4-19; Deposition of Birchfield, Doc. 182-3, p. 5, 88:1-9; Deposition of Jeffrey Shaw Doc. 182-4, p. 25, 95:4-7). Pursuant to this policy, Jenkins understood he was supposed to report any discrimination or harassment. (Jenkins Depo., Doc. 182-2, p. 17, 54:17-57:23). Jenkins also knew that he could report discrimination or harassment to a shift manager, plant or senior location manager, the complex manager, the complex HR manager, or to Bobby Elrod. (*Id*.). All employees are trained on Ala-Koch's harassment policy when they are hired and are retrained annually. (Jeffery Shaw Depo.,  Doc. 182-4, p. 24, 89:5-10; 89:15-90:4; 92:9-14, Birchfield Declaration, ¶ 3, Doc. 176-28; Laura Cortes Depo., Doc. 182-4, p. 59, 31:20-32:14). Human Resources Manager McDickinson received annual training on anti-harassment policies. (McDickinson Depo., Doc. 182-4, p. 242, 106:2-7; McDickinson Depo. Fuller case, Doc. 182-4, p. 361, 23:15-23; McDickinson Declaration, ¶ 4, Doc. 176-27).  Birchfield also received training. (Birchfield Depo. Doc. 182-3, p. 4, 46:4-15; Birchfield Depo. Fuller case at Doc. 182-4, p. 466, 18:14-22).  During his three (3) years of employment, Jenkins acknowledged he read and understood the anti-harassment policy no less than four (4) times. (Doc. 182-1; Jenkins Depo., Doc. 182-2, p. 17, 55:12-57:23).

### B.     Jenkins' Employment at Ala-Koch.

Jenkins started working for Ala-Koch in 2013. (Jenkins Depo., Doc. 182-2, p. 12 at 35:19-20). Jenkins attended orientation where he acknowledged his receipt and understanding of Ala-Koch's harassment policy and complaint procedures. (Jenkins Depo., Doc. 182-2, p. 14, 43:4-16; Orientation Acknowledgment, Doc. 182-4, p. 627). Jenkins also acknowledged his receipt and understanding of Ala-Koch's Rules of Conduct on multiple occasions, which included that theft of company time and leaving an assigned work area without permission would result in immediate termination. (Rules of Conduct Acknowledgements, Doc. 182-4, p. 630-634; Jenkins Depo., Doc. 182-2, p. 14, 43:4-9). Specifically, the Ala-Koch Rules of Conduct provide the following violations subject an employee to immediate termination: theft of company time, leaving an assigned work area without supervisory permission, and falsification of any time clock punch. (Rules of Conduct Acknowledgements, Doc. 182-4, p. 630-634).

In April of 2014, Jenkins was promoted to the position of inventory clerk in the purchasing department. (April 2014 Personnel Action Form, Doc. 182-4, p. 636). As of the summer of 2015, Jenkins began reporting to Jeffrey Shaw ("Shaw"). (Shaw Depo. Doc. 182-4, p 8, 27:11-28:17; Derrick Willingham Depo., Doc. 182-5, p. 5, 12:4-5).

In 2015, McDickinson was the human resources manager for the debone facility. (McDickinson Depo., Doc. 182-4, p. 220, 20:11-14; P. 235 at 77:16). She reported to David Birchfield who was the complex human resources manager for Ala-Koch. (McDickinson Depo. Doc. 182-4, p. 220, 20:11-17). Birchfield reported to Elrod, who at that time was the corporate director of human resources. (Elrod Deposition, Doc. 182-6, p. 3-4, 8:20-9:11; Birchfield Depo., Doc. 182-3, p. 6, 93:21-94:2).

## C.    Jenkins' Misconduct and Denials of Relationship with McDickinson.

On February 11, 2014, Jenkins received a written warning after another employee complained about Jenkins confrontational behavior. (Jenkins Depo., Doc. 182-2, p. 15-16, 49:21-51:6; Written Warning, Doc. 182-4, p. 629). Ala-Koch retrained Jenkins on the company's harassment policy and reporting procedures, which he signed. (Doc. 182-1, p. 10-11). In August 2014, Jenkins was again retrained the policy. (Doc. 182-1, p. 7-9).

In November 2014, the business agent for the Retail Warehouse Department Store Union, Curtis Gray, complained to human resources that Jenkins had threatened him. (Written Warning and Statement by Curtis Gray, Doc. 182-6, p. 72-75).  Jenkins was issued a disciplinary warning and retrained on the anti-harassment policy. (*Id.*; Jenkins Depo., Doc. 182-2, p. 23, 78:9-15). Jenkins

acknowledged for the fourth time that he read and understood the policy. (Doc. 182-1).

In August 2015, the plant manager at that time, Randy Davenport reported that Jenkins violated safety rules by using an exit that was marked "Emergency Exit Only." (8/7/15 Cortes Email to Shaw, Doc. 182-6, p. 145; 8/7/15 Disciplinary Warning and photographs, Doc. 182-6, p. 142-145). Davenport reported that he previously counseled Jenkins about these issues. (*Id*). Human resources generalist Laura Cortes instructed Shaw to bring Jenkins to the HR office for disciplinary action. (Doc. 182-6 p. 145; Cortes Depo., Doc. 182-4, p. 99, 191:16-192:2; Birchfield Depo., Doc. 182-3, p. 15, 238:12-21). Jenkins was suspended pending investigation after he accused a USDA official of the same infraction. (*Id.*; Shaw Depo., Doc. 182-4, p. 36, 137:4-138:12; p. 40, 153:15-155:2; 8/9/15 Emails between Birchfield and Rhodes re: Irish Jenkins, Doc. 182-6, p. 147).

At this same time, Birchfield learned of a rumor that McDickinson was involved in a sexual relationship with Jenkins and another employee, Steve Jackson, and that McDickinson was excusing attendance points in exchange for sexual favors. (Birchfield Depo., Doc. 182-4, p. 521, 239:22-240:13; pp. 527-528 264:8-265:10) Ala-Koch utilizes a point system under which employees are terminated if they reach a certain number of points for unexcused absences. (Jenkins Acknowledgement of Attendance Policy, Doc. 182-6, p. 149- 151).

Birchfield investigated the rumor. (Birchfield Depo.Doc. 182-4 p. 517-519, 223:19-224:5; 226:23-227:8; 230:19-232:1; Birchfield Investigation Notes, Doc. 182-7, pp. 2-6). Everyone implicated in the rumor denied any sexual activity. (Steven Jackson Depo._Gray case, Doc. 182-7, p. 11-12, 108:20-110:13; McDickinson Depo., Doc. 182-4, p. 239, 95:5-16; p. 247, 127:7-10; p. 274, 235:20-236:2; Birchfield Depo., Doc. 182-3, p. 20-21, 332:19-333:1; McDickinson Written Statement, Doc. 182-7, p. 18). According to Jenkins, his relationship with McDickinson did not begin until October of 2015. (Jenkins' Interrogatory Responses, Doc. 182-7, pp. 20-24). Jackson admits that he was never sexually involved with McDickinson and that he denied to Birchfield that McDickinson and Jenkins were involved. (Jackson_Gray Depo., Doc. 182-7 p. 10-11 at 105:2-106:1; 110:3-16). Birchfield interviewed multiple employees, but none reported they had personal knowledge of any sexual activity or had even witnessed them together. (Birchfield Depo., Doc. 182-3, p. 3, 34:11-23; p. 13 228:22-229:6; Doc 176-21 p. 66, 262:6-15; p. 91, 363:7-13; p. 120, 477:22-478:8; Sharpley Depo., Doc. 182-6, p. 87, 41:-42:13; p. 132 221:5-22 (testifying he told Birchfield "it's going around the plant" that "Jenkins was fooling with Ms. McDickinson," but admitting "[w]hether they [McDickinson and Jenkins] had sex or not, I don't know"); Kathie Denton Depo., Doc. 182-7, p. 27-28, 104:6-105:4 (testifying she told Birchfield "I

don't know anything. All I can tell you is rumors."); Johngernita Foxhall Depo., Doc. 182-8, p. 3, 47: 2-7; pp. 5-8, 108:19-118:1).[1]

Birchfield also investigated Jenkins' attendance. Birchfield asked the payroll clerk, Sabrina Bell ("Bell"), if McDickinson excused any absences or tardies for Jackson or Jenkins. (Emails between Birchfield and Bell, Doc. 182-9, p. 2). Bell reported she was not aware of McDickinson excusing attendance points for anyone. (*Id.*) Likewise, Shaw reported to Birchfield that he was not aware of McDickinson excusing any absences or tardies for Jenkins. (Shaw Depo., Doc. 182-4, p. 36,138:7-21). Jenkins denies he had excessive attendance points as would have warranted his termination in August of 2015. (Jenkins Depo., Doc. 182-2, p. 27, 95:11-16) ("I'm like, man, ain't no way. …ain't no way I had that many points."). When Birchfield questioned him, Jenkins denied McDickinson excused his points and told Birchfield that he "didn't know nothing about no nineteen points." (Jenkins Depo., Doc. 182-2, p. 156, 352:1-354:6). Likewise, Jackson denied that McDickinson ever excused any absence or tardy for him in exchange for sex. (Jackson_Gray Depo. Doc. 182-7, p. 16 at 428:19-23). Jenkins contends that McDickinson got involved with his attendance when his fiancé's son died and

---

[1] Foxhall testified she told Birchfield all the rumors around the plant, but did not tell him that McDickinson called Jenkins at night or that she saw them smoking together. (Foxhall Depo., Doc. 182-8, p. 5 at 108:19-118:1). Foxhall has no personal knowledge of any sexual activity between them. (Foxhall Depo., Doc. 182-8, p. 3 at 47:2-7).

McDickinson encouraged him to have his named added in the obituary as family so he could qualify for bereavement leave under the Ala-Koch policy. (Jenkins Depo., Doc. 182-2, pp. 26-28, 93:15-94:1; 98:9-99:3). Jenkins' absence for the funeral occurred in May of 2015, before the alleged relationship between Jenkins and McDickinson began. (Foxhall Depo., Doc. 182-8, p. 8, 118:12-119:8; May 2015 Foxhall Personnel Action Form, Doc. 182-9, p. 4).[2]

During the investigation, Jenkins and Jackson were suspended. McDickinson was on leave for National Guard duty. (Birchfield Depo., Doc. 182-3, p. 15, 238:6-239:18; McDickinson Depo., Doc. 182-4, pp. 221-223, 22:6-29:12). After the investigation was completed, Birchfield brought Jackson and Jenkins back to work with full pay. (8/11/15 Email from Birchfield to Bruno re Jenkins, Doc. 182-9, p. 12). Birchfield did not discipline Jenkins for using the emergency door because his investigation revealed that other employees and the USDA inspectors used the exit with impunity. (Birchfield Depo., Doc. 182-3, pp. 8-9, 189:19-193:6; p. 15, 238:6-239:5; pp. 16-18, 259:5-260:20; 271:12-273:16). On August 27, 2015, shortly after his return to work, Shaw retrained Jenkins on Ala-

---

[2] The only other time Jenkins could recall McDickinson excusing his points was when Cortes asked him in November of 2015 work on a Saturday to move boxes of personnel records. (Jenkins Depo., Doc. 182-2, p. 27, 94:10-95:6). Everyone reported to work at 6:30 a.m., but Jenkins did not arrive until 7:00 a.m. McDickinson excused the point and confirmed she changed the start time to 7:00 a.m. (Jenkins November 2015 Attendance Warning Report, Doc. 182-9, p. 6; November 2015 Emails between Cortes, McDickinson, Shaw, Doc. 182-9, p. 8-10).

Koch's policy for reporting harassment. (Shaw Depo. Doc. 182-4 pp. 34-35, 130:20-131:3; 132:6-133:4; Jenkins and Shaw Acknowledgement of 8/27/15 Training Doc., 182-9, pp. 14-15; 2015 Ala-Koch Harassment Training, Doc. 182-10 pp. 1-22).

In late 2015, Bobby Cotton replaced Davenport as the plant manager. (Jenkins Depo., Doc. 182-2, p. 52, 194:1-4). On December 7, 2015, Cotton reported to Birchfield he saw Jenkins smoking in an unauthorized area. (Birchfield Depo., Doc. 182-3 p. 19, 325:2-13). Cotton stated that Jenkins was "very confrontational and stated I was targeting him." (12/7/15 Emails between Cotton and Birchfield, Doc. 182-10, pp. 24-25). Jenkins received a disciplinary warning that he refused to sign. (12/7/15 Employee Warning Report, Doc. 182-10, p. 27). Immediately thereafter, Cotton again observed him wandering around the facility and reported his concerns to Birchfield and to Shaw. (Doc. 182-10, p. 24-25; Shaw Depo., Doc. 182-4, p. 35, 135:18-136:10). Shaw counseled Jenkins. (*Id.*). On December 9, 2015, Jenkins both came to work late and left early, resulting in a "final warning." (Employee Attendance Report, Doc. 182-10, p. 29; Jenkins Depo., Doc. 182-2, p. 117, 430:15-431:3).

On December 17, 2015, Birchfield again confronted Jenkins about a rumor that Jenkins was bragging about having sex with McDickinson. (Birchfield Depo. Doc. 182-3, p. 19, 328:10-329:5). Jenkins secretly recorded the meeting.

(Birchfield Depo., Doc. 182-3, p. 20, 329:1-10; p. 23, 373:3-4; Jenkins Depo., Doc. 182-2, p. 37, 136:12-21; p. 90, 322:9-19). In the recording, Birchfield asks Jenkins "are you f***ing Melissa." Jenkins responds "no, man!" (Jenkins Depo. Doc. 182-2, p. 90, 323:7-21) and asks why Birchfield would accuse him of being involved with McDickinson. (Audio Recording, Doc. 182-10 (filed conventionally)). Jenkins signed a statement denying any sexual relationship with McDickinson. (Jenkins Signed Statement, Doc. 182-10, p. 32). Jenkins denied the relationship because he felt it was not any of Birchfield's "business" and because he did not want his fiancé to find out about his relationship with McDickinson. (Jenkins Depo., Doc. 182-2, p. 90-91 at 323:3-327:15).

### D.    Jenkins' Termination

On March 20 or 21, 2016, Birchfield told Shaw that he had received complaints about Jenkins being out of his work area. (Shaw Depo., Doc. 182-4, pp. 13-14, 48:22-49:8). Cotton complained to Birchfield that Jenkins was roaming around the facility. (Birchfield Depo., Doc. 182-4, p. 501, 160:2-7; p. 730, 198:11-20). Shaw previously counseled Jenkins that people were noticing he was out of his work area. (Shaw Depo., Doc. 182-4, p. 28, 105:13-106:19; p. 36, 140:5-13; Willingham Depo., Doc. 182-5, pp. 10-11, 30:12-33:15). Shaw had also instructed Jenkins that he was not permitted to smoke while on the clock. (Shaw Depo., Doc. 182-4, p. 30, 114:10-12; 115:16-20; p. 43, 167:19-168:8).

On March 21, 2016, Shaw observed Jenkins outside of his work area smoking. (Shaw Depo., Doc. 182-4, pp. 28-29, 106:6-14; 110:22-111:1; Shaw Statement, Doc. 182-10, p. 34). Jenkins admitted to Shaw that he was on the clock. *Id*. Shaw did not permit his subordinates to take smoke breaks while on the clock. (Shaw Depo., Doc. 182-4, p. 43, 167:19-168:8). Shaw discovered Jenkins had just clocked in from a break and, instead of resuming his job duties, continued his break by leaving his work area to smoke without permission. (Shaw Depo., Doc. 182-4, p. 49, 189:7-190:2; Photographs, Doc. 182-15 pp. 2-4). Shaw escorted Jenkins to the HR department for disciplinary action. Jenkins claimed Cotton gave him permission. (Shaw Statement, Doc. 182-10, p. 34). Cortes investigated this claim. Cotton denied telling Jenkins that he could smoke while on the clock. (March 29, 2016 Email between Cortes and Cotton, Doc. 182-15, pp. 6-7).

Cortes admits she made the decision to suspend Jenkins. (Cortes Depo., Doc. 182-4, pp. 103-104, 208:20-209:4).  HR clerk, Rebecca Milam, notified Jenkins of his termination by telephone on March 25. (Rebecca Milam Lewis Depo., Doc. 182-15, pp. 22-23, 56:6-9; 57:1-4). Jenkins was terminated for theft of company time and abandoning his work area. (Doc. 182-12, pp. 2-3)  Cortes and the human resources managers had the authority to terminate employees, but Milam does not recall who told her terminate Jenkins. (Milam Depo., Doc. 182-15, p. 24, 61:5-7). Cortes reported that Cotton gave the directive to terminate Jenkins because "Cotton

wanted him gone." (Cortes Depo., Doc. 182-4, p. 104, 209:5-210:6).  The only individuals who signed Jenkins' termination paperwork were Milam, Cortes and Shaw. (Jenkins PAF for Termination, Doc. 182-12, p. 5).

Jenkins testified Birchfield terminated him because Birchfield was upset about Jenkins' relationship with McDickinson.

> Q. Any other reasons you did not tell Birchfield that you and Ms. McDickinson had had sexual contact?
>
> A. Yeah, because I didn't want to lose my job. Steve told me it was coming, too.
>
> Q. What did Steve tell you was coming.
>
> A. Shit…..He told me, man, you—I wasn't going to win, leave her.
>
> Q. Steve told you to leave Ms. McDickinson alone?
>
> A. David would come after me. And when he do, it's over. It happened.
>
> Q. And that's what happened?
>
> A. Yeah, I'm fired, man.

(Jenkins Depo., Doc. 182-2, pp. 91-92, 327:11-328:7).

After his termination, on March 31, 2016, Jenkins telephoned and texted with Elrod. (Jenkins Depo., Doc. 182-2, p. 70, 241:10-243:324; Elrod Depo., Doc. 182-6, p. 20, 74:2-9; 5/20/2016 EEOC Declaration, Doc. 182-12, pp. 9-10). Jenkins only reported to Elrod that he had sex with McDickinson and Birchfield questioned him about it. (Jenkins Depo., Doc. 182-2 pp. 70-71 241:6-245:6.). The

same day Jenkins spoke to Elrod, he sent him the recording of his conversation with Birchfield via text message which was on March 31, 2016 – six (6) days after his termination. (*Id*.; Text Messages between Elrod and Jenkins, Doc. 182-12, pp. 12-13).

### E.    Jenkins' Consensual Relationship with McDickinson and the EEOC's Investigation and Dismissal.

In his interrogatory responses, Jenkins averred that the sexual liaisons with McDickinson began on October 10, 2015, but Jenkins has no idea when they ended. (Jenkins' Interrogatory Responses, Doc. 182-7, pp. 20-24; Jenkins Depo. Doc. 182-2 p. 28, 99:22-100:1). Jenkins testified as follows:

> Q. Well, I mean, you can put it in any words you want. I'm just trying to figure out when is the last time that you and Ms. McDickinson would have had sexual contact.
>
> A. If I can recall when it stopped – I guess he [Birchfield] stopped ur, got rid of my ass. I was gone, man.
>
> Q. Well, that's what I'm trying to ask you. Is it your testimony that the sexual contact from Ms. McDickinson towards you continued all through the last day [of] your employment?
>
> A. I can't say that. Last day or month, no, I can't say that.
>
> Q. The last month of your employment?
>
> A. I can't answer that.
>
> Q. Okay. As you sit here today, do you have any idea about when sexual contact from Ms. McDickinson stopped toward you?
>
> A. I can't answer that, ma'am, I really can't.

(Jenkins Depo., Doc. 182-2 p. 50-51, 188:22-191:22).

In two (2) separate sworn declarations, Jenkins averred his relationship with McDickinson was "consensual." (Doc. 182-12, pp. 9-10; Jenkins EEOC Charge, Doc. 182-16 pp. 1-6). Jenkins testified the sexual encounters with McDickinson consisted of (1) two to three meetings off company property at a gas station where McDickinson fondled him in her car; (2) "probably five or more" instances of McDickinson performing oral sex, but he could not really recall; and (3) nine to 10 times of sexual intercourse off company property at bars or other locations where Jenkins met McDickinson. (Jenkins Depo., Doc. 182-2, pp. 28-32, 101:5-19, 105:3-106:16; 107:22-110:14; 111:16-112:21; 116:10-20; pp. 41-42, 150:13-154:23; 155:12-156:16; pp. 44-46, 166:15-169:21;170:5-172:14). Jenkins admits that he was aroused, achieved an erection, and reached an orgasm "every time" that he and McDickinson engaged in oral sex and intercourse. (Jenkins Depo., Doc. 182-2 p. 42, 155:9-11). Jenkins admitted he was "enjoying it" when McDickinson performed oral sex. (Jenkins Depo., Doc. 182-2, p. 42, 154:3-23). Jenkins does not recall telling McDickinson to stop. (*Id.* at p. 31, 111:5-15; p. 33, 119:13-22). Jenkins thinks his relationship with McDickinson ended after it was clear Birchfield was romantically involved with McDickinson. (*Id.* at p. 47, 175:8-176:2; p. 112, 410:3-19). Jenkins never complained to anyone at Ala-Koch that he

was being sexually harassed. (Jenkins Depo., Doc. 182-2, pp. 51-52, 192:7-193:9; 194:6-197:13; p. 111, 405:1-12).

On June 17, 2016, Jenkins filed an EEOC Charge. (EEOC Charge, Doc. 182-16, pp. 1-6). The EEOC investigated his allegations and found them to be without merit. (Determination Letter, Doc. 182-6, pp. 7-11). The EEOC determined "there does not appear to be any evidence that [Jenkins] was subjected to unwelcome physical advances. Additionally, it appears that [Jenkins] reported the consensual sexual relationship with the HR Manager after the decision had been made to terminate his employment." *Id.*

## III.    Standards of Review

The Court reviews the grant of summary judgment *de novo* construing "all reasonable doubts about the facts in favor of the non-movant." *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs.*, 512 F. 3d 1296, 1299 (11th Cir. 2008) (citation omitted). Summary judgment is proper if "the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gitlitz v. Compagnie Nationale Air France*, 129 F. 3d 554, 556 (11th Cir. 1997). The Court may affirm summary judgment for any ground supported by the record, whether or not the district court relied upon or considered the ground. *Rowell v. BellSouth Corp.*, 433 F. 3d 794, 797-98 (11th Cir. 2005).

## SUMMARY OF ARGUMENT

The district court's ruling is due to be affirmed. As for his tangible action sex discrimination claim under Title VII, Jenkins failed to show the alleged conduct was unwelcome or severe or pervasive. Jenkins admitted his relationship with McDickinson was consensual and that he enjoyed her advances. Jenkins met her away from company property to engage in sex. He never complained about her advances during his employment and, in fact, denied and tried to conceal that such a relationship existed. Jenkins also failed to present evidence that the harassment culminated in his termination as he could not show either McDickinson or Birchfield terminated his employment or a causal connection between a rejection of their advances and his termination. Summary judgment as to Jenkins' Title VII sex discrimination claim is due to be affirmed on the alternate ground that Jenkins failed to show the alleged discrimination was based on his sex given his contention that McDickinson and Birchfield sexually pursued female employees.

Jenkins abandoned his race claims at summary judgment by failing to rebut Koch Foods' arguments. Even if he had preserved this claim, he failed to show he was subjected to a hostile work environment based upon his race. Further, Jenkins cannot overcome Koch Foods' *Faragher* affirmative defense as he failed to avail himself of Ala-Koch's reporting procedures. Jenkins also failed to meet Koch Foods' legitimate, nondiscriminatory reasons head on with rebuttal evidence.

Summary judgment as to Jenkins' Title VII race claim should be affirmed on the alternate ground that Jenkins failed to exhaust his administrative remedies.

Jenkins abandons his state law tort claims on appeal by addressing them in a cursory manner without supporting law or argument. He also cannot establish a prima facie case as to any of the tort claims. Even if he could establish a prima facie case, he has failed to show Koch Foods should be responsible for tortious conduct which he failed to report and which was outside of the scope of McDickinson's employment.

In addition, summary judgment is due to be affirmed in favor of Koch on the alternate grounds that Jenkins failed to show it was a joint employer or was an integrated enterprise with Ala-Koch.

## **ARGUMENT**

### I.    **The District Court Correctly Granted Summary Judgment On Jenkins' Title VII Sex Discrimination Claim.**

#### A.    **Jenkins Failed to Show The Alleged Conduct Was Unwelcome.**

The conduct at issue "must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982). Although "voluntariness" of the employee's participation in sexual intercourse is not dispositive, the court must evaluate "whether [the employee] by [his] conduct indicated that the alleged sexual advances were unwelcome." *Vinson*

*v. Meritor Sav. Bank*, 477 U.S. 57, 68 (1986). When, as here, an employee admittedly engages in a long-term consensual relationship with the purported harasser, federal courts have held the employee fails to establish the conduct was unwelcome. *See e.g., Murdoch v. Medjet Assistance, LLC*, 294 F. Supp. 3d 1242, 1261 (N.D. Ala. 2018); *Waltz v. Dunning*, No. 2:13-CV-00517-JEO, 2014 WL 7409725, at *9 (N.D. Ala. Dec. 31, 2014)(granting summary judgment when the evidence showed that "the relationship had become consensual").

Jenkins argues incorrectly the district court assumed the conduct was unwelcome merely because Jenkins was not physically forced to participate. Rather, as instructed by *Meritor*, the district court properly evaluated whether, by his own conduct, Jenkins indicated the advances were unwelcome, including the following: (1) Jenkins averred under oath on multiple occasions this his entire "relationship" with McDickinson was "indeed consensual;" (2) Jenkins admitted he enjoyed McDickinson's advances, was aroused by her advances, and participated in each sexual encounter until he achieved an orgasm; (3) Jenkins met McDickinson outside of work for sexual trysts and frequently spoke to her on the phone outside of working hours; (4) when Jenkins arranged to meet McDickinson, he brought condoms with him and took care to use them before engaging in sex; (5) Jenkins never tried to stop McDickinson's advances; (6) Jenkins took time to lock doors when engaged in sexual encounters at work with McDickinson so they

would not be caught; (7) McDickinson never threatened Jenkins; and (8) Jenkins never complained to anyone and, in fact, vehemently denied such a relationship existed when questioned about it by Birchfield.  Notably, the EEOC determined Jenkins "was involved in a consensual sexual relationship." (EEOC Determination, Doc. 182-16, pp. 10-11).[3]

Jenkins' reliance on *Meritor* is misplaced. Although the Supreme Court held that voluntary participation in sexual intercourse is not a defense in and of itself, it also held the employee's conduct, including her sexually provocative speech and dress may be relevant to whether the conduct was unwelcome. Moreover, the facts of *Meritor* are highly distinguishable in that the plaintiff alleged that she initially refused her supervisor's sexual overtures and he "forcibly raped her on several occasions." *Vinson*, 477 U.S. at 59.

Likewise, Jenkins' reliance on *Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979 (8th Cir. 2012) and *Cooke v. Stefanie Mgmt. Servs., Inc*., 250 F.3d 564 (11th Cir. 2001) is misplaced. In addition to having no precedential authority, the Eighth Circuit's inquiry in *Crutcher-Sanchez* focused on whether the district court properly denied the qualified immunity defense to a county employee. *Id.* at 985-86.  The facts are also distinguishable in that the plaintiff (1) "hesitated and voiced

---

[3] This Court considers EEOC determinations to be "highly probative." *Barfield v. Orange County*, 911 F.2d 644, 650-51(11th Cir. 1990)(citing *Smith v. Universal Servs. Inc*., 454 F.2d 154 (5th Cir. 1972)).

concerns" the first time she had sex with her supervisor; (2) the supervisor instructed her to keep the relationship a secret; (3) the plaintiff was unaware of the county's harassment policy or how to report harassment; (4) the supervisor took advantage of the plaintiff when she was intoxicated; and (5) that she was fired for ending the relationship. *Crutcher-Sanchez*, 687 F.3d at 986.

*Cooke* is equally distinguishable. In *Cooke*, the plaintiff alleged his manager subjected him to a "litany of sexual propositions, inappropriate touching, and nonverbal gestures of a sexual nature" and that he complained "numerous times" to the manager and the assistant manager. *Cooke,* 250 F.3d at 565. The plaintiff also forcefully told the manager "no means no," and was fired the next day. *Id.* The Seventh Circuit held the employer's evidence that the plaintiff voluntarily came to the work on his off days and wrote the manager a nice thank you note was insufficient to "satisfy its 'herculean burden' of overcoming the jury verdict." In so doing, the Seventh Circuit noted the balance of power in a social setting was "qualitatively different" as the plaintiff was free to leave at any time, but the manager's unwanted overtures occurred when the plaintiff was working alone and unable to leave.

In contrast to *Cooke*, Jenkins admittedly met McDickinson in social settings outside of work for sexual trysts when the purported imbalance of power was absent. Also, unlike the employee in *Cooke*, Jenkins never complained about the

alleged conduct to anyone or forcefully told McDickinson "no." Also, unlike the plaintiff in *Crutcher-Sanchez*, Jenkins was well-aware of the policy for reporting discrimination. Not only did he fail to report any harassment, he denied a relationship with McDickinson existed when asked about it. In sum, Jenkins welcomed and readily participated in the alleged sexual conduct.

### B.    The District Court Correctly Determined the Alleged Conduct Was Not Severe or Pervasive.

To meet the "severe or pervasive" requirement, an employee must prove he was subjected to harassment that was so "severe or pervasive" as "to alter the conditions of his employment and create an abusive working environment." *Vinson*, 477 U.S. at 67. A court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Importantly, the Eleventh Circuit has often found that even highly egregious allegations fail to meet the standard for a hostile work environment claim. *See, e.g.*, *Latrece Lockett v. Choice Hotels Int'l*, 315 F. App'x 862, 866 (11th Cir. 2009) (holding alleged conduct did not rise to the level of being severe and pervasive despite the fact that the coworker told the employee "that he would lick his 'p-u-s-s-y,' that 'he would go down on [her] good,' that his boyfriend 'ain't F'ing [her] right,' …and that he needed 'to get with a real guy,'" that he

26

referred to the employee as a "ho" and a "bitch," and "'jumped in [the employee's] face and acted like he was going to hit [the employee].'"); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999)

Jenkins alleges around a dozen consensual encounters with McDickinson over an unspecified period of time. Jenkins never felt physically threatened by McDickinson. Jenkins testified that McDickinson was emotionally distraught when she thought Jenkins' employment might end and swore that she would never hurt him. (Jenkins Depo., Doc. 182-2, p. 44, 163:21-165:20). Jenkins was not afraid to refuse McDickinson's alleged requests that he leave his girlfriend. (Jenkins Depo., Doc. 182-2, p. 36, 132:20-133:4).

To the extent Jenkins' claim is based upon anything Birchfield said, his claim is totally implausible as addressed *infra*. Nevertheless, Jenkins alleges a one-time request from Birchfield which he was not afraid to refuse. More importantly, however, Jenkins admits none of the alleged conduct interfered with his job performance. Jenkins testified he performed his job "to perfection" at all times. (Jenkins Depo., Doc. 182-2, p. 89, 319:6-17). Thus, Jenkins' sexual discrimination claim fails as a matter of law. *See Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924, 927 (11th Cir. 2015) (affirming summary judgment where employee did not "establish that the conduct interfered with his job performance").

**C.    The District Court Correctly Determined Jenkins Failed to Show the Harassment Culminated in His Termination.**

**1.    Jenkins failed to show Birchfield or McDickinson terminated his employment.**

To proceed under a tangible employment action theory, Jenkins must prove (1) that a tangible-employment action occurred and (2) that it "was causally related to the incident of harassment." *Cotton v. Cracker Barrel Old Country Store, Inc*., 434 F.3d 1227, 1232 (11th Cir. 2006). There is no inference of causation when the harasser is not the decisionmaker. *Llampallas v. Mini-Circuits, Lab, Inc*., 163 F.3d 1236, 1248 (11th Cir. 1998).

Jenkins admitted McDickinson did not terminate his employment. (Jenkins Depo., Doc. 182-2, p. 44, 165:6-19)("She [McDickinson] never fired me."). He also admitted he had no knowledge of Birchfield making the decision to terminate his employment and that no one ever told him that Birchfield made the decision. (Jenkins Depo., Doc. 182-2, p. 70, 240:19-23; p. 78, 273:21-274:11). Birchfield and McDickinson deny terminating Jenkins' employment and their signatures do not appear on any termination form. Rather, Shaw initiated the disciplinary action against Jenkins that led to his termination. Cortes made the decision to suspend Jenkins and investigated Jenkins' claim that he had permission to smoke while on the clock. (Cortes Depo., Doc. 182-4 p. 103-104, 208:4-209:4). According to Cortes, Cotton instructed that Jenkins be terminated because he disliked Jenkins.

Milam, who notified Jenkins of his termination, does not recall McDickinson or Birchfield directing her to do so.

On appeal, Jenkins makes new arguments that were not presented to the district court and thus should be disregarded.[4] Nevertheless, Jenkins misrepresents the record in arguing that Shaw and Cortes' testimony creates an issue of fact as to McDickinson and Birchfield's involvement. Jenkins cites Shaw's testimony for the proposition that McDickinson suspended Jenkins. (Jenkins. App. Brief, pp, 32-33). However, Shaw merely offered his speculation that "Laura Cortes called who I <u>believe</u> was Melissa McDickinson, explained the situation to her, and then the decision was made to suspend Irish Jenkins pending an investigation into the matter." (Doc. 189-15, p. 137, 106:5-107:12). Shaw made clear he had no personal knowledge about who made the decision, testifying as follows: "I don't know who made the final decision to suspend. I believe – I don't know who exactly made the decision to suspend as they were not in the room with us." (Doc. 189:15, p. 135, 99:23-100:5). Jenkins also relies on Shaw's testimony for the proposition that McDickinson conducted an investigation leading to Jenkins' termination, arguing

---

[4] *See Towns v. Directors Guild of Am., Inc*., No. 21-12044, 2022 WL 169017, at *4 (11th Cir. Jan. 19, 2022) (internal quotation marks omitted) ("Judicial economy is served and prejudice is avoided by binding the parties to the facts presented and theories argued below."); *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.")

McDickinson showed Shaw footage of Jenkins taking breaks while on the clock the "day after" Jenkins' suspension. (Jenkins. App. Brief, pp. 33). In truth, Shaw testified that "I went to Melissa's office, <u>I cannot remember the exact day after the suspension</u>, and she showed me camera footage of Irish Jenkins clocking in on a Saturday and then going back to the smoke shed and sitting for an extended period of time." At most, Shaw's testimony shows McDickinson relayed to him the results of the investigation. Shaw repeatedly testified he did not know who made the decision to suspend or terminate Jenkins. (Doc. 222, p. 15 n. 6).

Jenkins similarly misrepresents the testimony of Cortes in asserting that Cortes "explained that the decision to suspend Jenkins came from Birchfield." (Jenkins App. Brief, p. 33). In the cited portion, Cortes offered inadmissible hearsay statements of Steve Jackson that Birchfield had purportedly told him to report back to him when Jenkins was outside of his work area. In addition to being inadmissible hearsay, the testimony says nothing about Birchfield making the decision to suspend Jenkins. (Doc.. 189-9, p. 52, 202:12-206:7).

Jenkins' reliance on Birchfield's testimony fares no better. (Jenkins App. Brief, p. 33-34). Birchfield testified "Jeff Shaw or Bobby Cotton or whoever was plant manager at the time" made the decision to terminate Jenkins and that he guessed Cortes reviewed the decision. (Doc.. 189-6, p. 140, 171:3-172:22). Birchfield testified he was "not at all" involved in Jenkins' termination. (*Id.*). As

for McDickinson, Birchfield testified McDickinson would have signed off on employee terminations "if she's available." (*Id*.). Birchfield clarified, however, that the HR manager does not "make the decision of termination itself" but only reviews such decisions to ensure "guidelines are being followed." (*Id*.). Birchfield's testimony is consistent with that of Cortes who reported the termination came from Cotton. In sum, no evidence demonstrates McDickinson or Birchfield terminated Jenkins' employment.

### 2.    Jenkins' claim about Birchfield's request is implausible.

"Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." ... "[That] principle is equally applicable to summary judgment, and we may state it thus: testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it." *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985)); *see also Kesinger ex rel. Estate of Kesinger v. Herrington,* 381 F.3d 1243, 1249 (11th Cir. 2004)(holding plaintiff's testimony regarding his version of events was not "substantial evidence" and was properly disregarded as it was inconsistent with his written statements and not supported by physical evidence).

Jenkins claims Birchfield asked to watch Jenkins have sex with McDickinson. However, Jenkins admits he cannot even recall the year when this alleged conversation occurred. (Jenkins Depo., 182-2, 293:13-295:6). Jenkins admits he cannot recall anything that was said in the conversation. (Jenkins Depo., Doc. 182-2, p. 86, 306:6-307:2). Moreover, Jenkins' claim is flatly contradicted by the other evidence in this case, including Jenkins' own testimony. In Jenkins' recorded conversation with Birchfield, Birchfield is heard angrily asking Jenkins if he is bragging to his coworkers about having sex with McDickinson–not asking Jenkins to have sex with McDickinson. Jenkins testified Birchfield wanted to get rid of him because of his suspected involvement with McDickinson. (Jenkins Depo., Doc. 182-2, p. 102-103, 371:11-328:7). Jenkins' claim is totally implausible and thus should be rejected by this Court.

### 3.     Jenkins failed to establish a causal connection between his termination and any refusal of sexual overtures.

Jenkins admitted the consensual relationship with McDickinson possibly extended through the date of his termination, and, as such, the district court correctly determined it could not be relied upon for a tangible employment action claim. (Jenkins Depo., Doc. 182-2 p. 50-51, 189:22-191:22). Thus, Jenkins was left with his purported refusal to have sex with McDickinson in Birchfield's presence. Even if Jenkins' contradictory allegation were considered by the Court, Jenkins cannot establish a causal connection between Birchfield's alleged request and his

termination. To recover under the tangible employment action theory of sexual harassment, "there [] must be a causal link between the tangible employment action and the sexual harassment." *Criswell v. Intellirisk Mgmt. Corp.,* 286 F. App'x 660, 663 (11th Cir. 2008). When a plaintiff relies upon temporal proximity to establish causation, the timing between the protected conduct and the adverse action must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *see also Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that three months is too long to allow a reasonable inference of causation).

Jenkins averred that his relationship with McDickinson began in October of 2015, and that Birchfield made his request <u>before</u> Jenkins became involved with McDickinson. (Jenkins May 2016 EEOC Declaration, Doc. 182-12, p. 9-10; Jenkins Interrogatory Responses, Doc. 182-7, p. 19-24). Jenkins was not terminated until the end of March of 2016. Thus, there was at least a six-month gap between Birchfield's request and his termination. In addition, Jenkins admitted he was terminated because of Birchfield's jealously rather than any alleged refusal to engage in sex. The Eleventh Circuit has held that a "personal animosity is not the equivalent of sex discrimination.... The plaintiff cannot turn a personal feud into a sex discrimination case." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986). For example, in *Pipkins v. City of Temple Terrace, Fla*., 267 F.3d 1197 (11th Cir.

2001), the plaintiff complained of harassment by both a male superior with whom she had had a failed extramarital relationship, as well as by her direct supervisor, a female who was friends with the male supervisor's wife and knew of the affair. This Court held "[s]uch a motivation, however, would be attributable to personal animosity and would not meet the Title VII requirement that the alteration of terms and conditions of employment be 'because of ... sex.'" *Id.* at 1200-01; *Succar v. Dade County School Board*, 229 F.3d 1343, 1345 (11th Cir. 2000).

Jenkins admitted that he was terminated for a different reason than his sex, *i.e.*, that Birchfield terminated him because he discovered Jenkins' relationship with McDickinson. (Jenkins Depo., Doc. 182-2, p. 91-92, 327:15-328:5). Like the harassment in *Pipkins,* the record evidence establishes that any action purportedly taken by Birchfield was based on personal animosity rather than Jenkins' gender.

Jenkins makes new arguments on appeal that were not presented to the district court to support causation. (Jenkins App. Brief, pp. 35-36; *compare with* Doc. 194, pp. 54-55). Jenkins argues that Birchfield checking on his attendance points in January of 2016 and counseling Jenkins' supervisor to ensure that Jenkins remained in his work area establishes a causal connection between a request for sex that was purportedly made before October of 2015 and Jenkins termination in March of 2016. (Jenkins App. Brief, pp. 35-36). Even if this Court credited Jenkins' sham affidavit, as did the district court, to conclude that Birchfield's

request was made in January of 2016, the termination occurred three (3) months later. The district court correctly noted that, under the law of this Circuit, a three (3) month span, standing alone, is insufficient to establish causation. (Doc. 222, p. 17).

Nevertheless, Jenkins' argument that Birchfield was seeking to terminate him in December of 2015 is nonsensical given Jenkins' allegation: "In December 2015, Jenkins was suspended for three days for an alleged "points" violation. Upon returning to work, Birchfield and McDickinson retroactively reduced his points balance, paid him for the time off, and told Jenkins that he was 'in' with them." (Jenkins App. Brief, p. 25).[5] Jenkins' contention that Birchfield was taking attendance points away, giving him paid time off, and simultaneously trying to terminate him is absurd. Similarly, Jenkins' contention that Birchfield's directive to Shaw to keep Jenkins in his work area is evidence of causation is inconsistent with Jenkins' admissions that "[o]n December 7, 2015, Cotton reported to Birchfield and others that Jenkins was seen smoking inside the office building near waste water…Cotton later asked Birchfield what the outcome was with regard to Jenkins because 'he is up front near the offices and walking around.'" (Jenkins

---

[5] Jenkins relies solely upon his sham affidavit for this allegation. Jenkins' averment he was suspended in December of 2015 is disproved by his time records which show he worked over 40 hours every week in December, except the week of Christmas. (Jenkins Compensation Detail, Doc. 182-16, p. 37). Jenkins' only suspension before his termination occurred in August of 2015. *See supra*, p. 35.

App. Brief, p. 18). Jenkins' admissions disprove his argument. Jenkins fails to establish a causal connection between any rejection of sexual overtures and his termination.

**4.     Jenkins failed to establish the reasons for his termination were a pretext for sex discrimination.**

As this Court has recognized, a termination will support a tangible employment action claim "only if it was caused by discrimination." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1300 (11th Cir. 2007) (quoting *Ellerth*, 524 U.S. at 760); *Jackson v. Alabama Dep't of Corr.*, 643 F. App'x 889, 892 (11th Cir. 2016). In *Baldwin*, this Court held the employee's tangible employment action harassment claim failed because there was no genuine issue of material fact about what caused the employee's termination, namely her refusal to cooperate with the employer's efforts to resolve her harassment complaint.

As noted by the district court, Jenkins failed to make any substantive arguments to rebut Koch Foods' legitimate, nondiscriminatory reasons for his termination.  (Doc. 222, pp. 17-18). Although Jenkins contends he devoted an "entire section of his brief to this issue," the portion Jenkins relies upon is limited to Jenkins' allegation that Birchfield overstated the time that Jenkins was taking a break while on the clock in response to Elrod's inquiry about Jenkins' termination. (Jenkins App. Brief, p. 36 n. 8; Doc. 194, pp. 31-34). Jenkins did not make any pretext arguments. For the first time on appeal, Jenkins argues pretext is shown by

Koch Foods' purported failure to follow its progressive disciplinary policy and by Birchfield's explanation to Elrod weeks after Jenkins' termination. Even if this Court were to consider these new arguments, they fail to demonstrate pretext. First, Jenkins was terminated for being out of his work area without permission and for stealing time by intentionally clocking in before he finished his break. The Rules of Conduct provide that theft of company time is a terminable offense as well as "leaving an assigned work area or workstation during work hours without supervisory permission." (Doc. 189-1, p. 2). Jenkins was not terminated for merely taking an extended break, but for clocking in with the intent to get paid for not working and for leaving his work area without permission.

Jenkins' allegation that Birchfield reported the incorrect amount of time that Jenkins had been out of his work area fails to show pretext. Jenkins has failed to establish that Birchfield was involved in the decision to terminate his employment or that at the time of Jenkins' termination on March 25th, that Birchfield analyzed Jenkins' time records such that Birchfield had actual knowledge of the amount of time at issue. It is undisputed Jenkins was terminated on March 25, 2016; the email communication and the obtaining of the camera footage that Jenkins relies upon occurred on March 31st - after his termination. (EEOC Charge, Doc.. 182-16, p. 16; Doc.. 194, p. 33). However, even if Birchfield was mistaken about the length of time that Jenkins was out of his work area, his mistaken belief does not rebut the

undisputed facts that Jenkins stole time by clocking in without the intent to resume his job duties and that he lacked permission from his supervisor to do so. As such, Jenkins has failed to demonstrate any connection between his termination and the alleged sexual advances.

### D. Jenkins Failed to Show The Alleged Conduct Was Based On His Gender.

"Title VII ... does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category." *Baldwin*, 480 F.3d at 1301-02. "Because '[a] claim of sexual harassment [under Title VII] is a claim of disparate treatment," in order to prevail a plaintiff must show "that similarly situated persons not of his sex were treated differently and better.'" *Baldwin*, 480 F.3d at 1302 (quoting *Mendoza*, 195 F.3d at 1254 n. 3 (Edmondson, J., concurring).

In addition, the Supreme Court has made clear that Title VII prohibits harassment based on sex as opposed to sexually inappropriate conduct. *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998).

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat [ion] ... because of ... sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.

*Id*.

In *Bostock*, the Supreme Court affirmed this important qualifier for sexual harassment claims to become actionable under Title VII as discrimination "based on sex." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1739 (2020). The Supreme Court explained that "[b]ecause the plaintiff [in *Oncale*] alleged that the harassment would not have taken place but for his sex—that is, the plaintiff would not have suffered similar treatment if he were female—a triable Title VII claim existed." *Id.* at 1744 (emphasis added). The Supreme Court's decision in *Bostock* reaffirms the Eleventh Circuit's long-standing precedent that no cause of action exists under Title VII for bi-sexual harassing conduct because men and women are treated by the harasser in the same manner. *Henson v. City of Dundee*, 682 F.2d 897, 903–04 (11th Cir. 1982)(internal citations omitted)(emphasis added). This Circuit explained as follows:

> . ….[T]here may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment. Although the plaintiff might have a remedy under state law in such a situation, the plaintiff would have no remedy under Title VII.

*Henson*, 682 F.2d at 903–04 (internal citations omitted); *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 262 (4th Cir. 2001) (vacating verdict in male employee's favor as he failed to prove harassment was based on sex where female employees made similar complaints regarding the harasser's vulgar and sexually suggestive

behavior); *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000); *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir.1996) ("Harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex.").

In *Holman*, a husband and wife, who were both employed with the state department of transportation, alleged that their supervisor made sexual advances toward each of them on separate occasions. *Holman*, 211 F.3d at 401. They further alleged the supervisor retaliated against them when they refused his advances. *Id.* The district court granted the employer's motion to dismiss on the grounds the married couple could not maintain a sexual harassment claim under Title VII where they alleged the harasser treated them in the same manner. *Id.* The Seventh Circuit affirmed the dismissal as follows:

> Both before and after *Oncale*, we have noted that because Title VII is premised on eliminating *discrimination,* inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit. Title VII does not cover the "equal opportunity" or "bisexual" harasser, then, because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly). As a result, the unfortunate objects of such harassment may be limited to state law for a remedy… But it is for Congress to decide whether to address bad workplace behavior that cannot be labeled discriminatory. It is not the province of federal courts to expand the language of a statute that is clearly limited. Title VII covers only sex discrimination.

*Holman*, 211 F.3d at 405; *see also Menaker v. Hofstra Univ*., 935 F.3d 20, 38 n.88 (2d Cir. 2019) (quoting *Brown v. Henderson*, 115 F. Supp. 2d 445, 450 (S.D.N.Y. 2000)) ("Put bluntly, the equal opportunity harasser escapes the purview of Title VII liability."); *EEOC v. Harbert-Yeargin, Inc*., 266 F.2d 498, 508 (6th Cir. 2001) (explaining in a sex harassment case that " 'Title VII does not cover the 'equal opportunity ... harasser' " "because such person is not discriminating on the basis of sex.'" (internal citation omitted)).

Just as in *Holman*, Jenkins alleges that the purported harassers, McDickinson and Birchfield, made unwanted sexual advances not only toward him, but also sexually harassed female employees, Ka'Toria Gray and Brooke Smith. (Doc.. 194, p. 43; Doc.. 1 at ¶ 46-50; Doc. 182-16) (alleging "[Brook] Smith was pursued by Melissa McDickinson for a sexual relationship and was terminated after she refused."). *Id.* Assuming Jenkins' allegations are true, he fails the *Bostock* test as changing his gender would not have yielded a different result. And, unlike the plaintiff in *Oncale*, Jenkins does not allege he would not have suffered similar treatment if he were female. *Bostock*, 140 S. Ct. at 1742 ("Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.").

Moreover, Jenkins admitted that his gender was not the reason McDickinson made advances toward him. Rather, Jenkins testified that it was his status as an ex-felon that caused McDickinson to pursue a romantic relationship with him. (Jenkins Depo., Doc. 182-2, p. 78, 274:12-275:3)(testifying "she [McDickinson] took advantage of me because she knew I was an ex-felon").  Thus, Jenkins failed to demonstrate the alleged conduct was based on his male gender and summary judgment is due to be affirmed on this alternate ground.

## II.    The District Court Correctly Granted Summary Judgment on Race Discrimination Claims.

### A.    Jenkins Abandoned His Race Claims.

" [ ] [I]n opposing a motion for summary judgment, a party may not rely on his or her pleadings to avoid an adverse judgment. The parties bear the burden of formulating arguments before the district court, and 'grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned….'" *Brackin v. Anson*, 585 Fed. Appx. 991, 994 (11th Cir. 2014) (quoting *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir.1995)). "A party ...waives an issue by failing to make any substantive arguments with respect to that issue." *See Zarate v. U.S. Attorney Gen*., 307 F. App'x 289, 290 (11th Cir. 2009). Jenkins presented no substantive arguments in support of his race claims. Jenkins merely quibbled over what standard of proof applied to § 1981 claims. (Doc. 194, pp. 50-52). Jenkins' response in opposition to Koch Foods' summary judgment

motion was devoid of any argument that he was subjected to a racially hostile work environment or discrimination. (Doc. 194). Indeed, Jenkins failed to rebut any of the arguments advanced by Koch Foods. In addition, Jenkins expressly conceded his hostile work environment claim. (Doc. 194, p. 55)("Jenkins sexual harassment claim is based on … a claim for tangible employment job action sexual harassment.").[6] Although the district court addressed the substantive merits of Jenkins' disparate treatment and hostile work environment race claims, Jenkins' arguments advanced on appeal are waived because he did not raise them in opposition to Koch Foods' summary judgment motion. Summary judgment in Koch Foods' favor is due to be affirmed on this basis alone.

## B.    Race-Plus and Mixed Motive Claims Are Not Actionable under § 1981.

Section 1981 protects only against race discrimination, and, as such, race-plus claims are not actionable under § 1981. *See e.g., Savage v. Temple Univ. - of Commonwealth Sys. of Higher Educ.,* No. CV 19-6026-KSM, 2022 WL 911153, at *7 (E.D. Pa. Mar. 29, 2022) ("This Court recently held that although intersectional discrimination claims are cognizable under Title VII, they are not cognizable under

---

[6] On appeal, Jenkins makes clear his race claim is duplicative of his sex discrimination claim and that he is not pursuing the disparate treatment claim alleged in his Complaint. (Doc. 1, ¶ 102)(alleging Jenkins was treated less favorably than "similarly-situated employee who were not African-American"). Because Jenkins expressly stipulated to dismissal of his hostile work environment claim based on sex, he may not revive that claim based upon race on appeal.

§ 1981."); *Jones v. Horizon Shipbuilding, Inc*., 2012 U.S. Dist. LEXIS 150567, at *39-40 (S.D. Ala. Oct. 19, 2012) (dismissing plaintiff's § 1981 hostile work environment claim based upon sex and race as the claim "is flatly impossible … since that statute forbids only race discrimination."); *Craig v. Yale Univ. Sch. of Med*., 2013 U.S. Dist. LEXIS 29369, at *31 (D. Conn. March 4, 2013) (noting "42 U.S.C. § 1981 prohibits only racial discrimination and does not prohibit 'race plus' gender discrimination"). It is unclear whether Jenkins seeks reversal of summary judgment as to his § 1981 claim. He cites to no authorities addressing the "but for" standard under § 1981 and, instead, argues there is sufficient evidence that his race was a "motivating factor." (Jenkins App. Brief, p. 57). The motivating factor standard is inapplicable to § 1981 claims. *Ziyadat v. Diamondrock Hosp. Co*., 3 F.4th 1291, 1297 (11th Cir. 2021) (noting that a § 1981 plaintiff "bears the burden of showing that race was a but-for cause of his injury"); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 2020 WL 1325816 at *7 (U.S. Mar. 23, 2020(holding "but for" standard applies to § 1981 claims).  To the extent Jenkins has not waived his § 1981 claim, summary judgment is due to be affirmed as Jenkins does not contend, much less point to any evidence that shows his race was the determinative factor in any adverse action.

## C.    Jenkins Failed To Exhaust His Administrative Remedies.

Prior to filing an action in federal court for discrimination, a plaintiff must

file an administrative charge with the EEOC. *Gregory v. Ga. Dep't of Human Res*., 355 F.3d 1277, 1279 (11th Cir. 2004). The Eleventh Circuit has cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint. *Id.* at 1279–80. Jenkins admitted in open court that he failed to exhaust his administrative remedies. (Doc.. 182-16, pp. 14-16)("Ms. Barlotta is correct. That [race discrimination] is not in his EEOC charge. And so with respect to the claims brought under Title VII, we no longer oppose that [dismissal]."). Jenkins' Charge is devoid of any factual allegations regarding race-based harassment or discrimination. Thus, summary judgment is due to be affirmed as to his Title VII race claim on this alternative ground.

### D.    The District Court Applied the Correct Standard to Jenkins' Race Claims.

Koch Foods moved for summary judgment as to the disparate treatment and hostile work environment claims asserted in Count II of Jenkins' Complaint. (Doc. 1, p. 15). The district court analyzed each claim under separate frameworks and determined Jenkins' failure to identify a similarly-situated comparator outside of his protected class warranted summary judgment as to his disparate treatment claim. (Doc. 222, pp. 18-20). The district court noted that Jenkins' failure to identify a comparator was not necessarily fatal had he been able to point to "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." (Doc. 222, p. 20, n. 8). The district court granted

summary judgment on Jenkins' racially hostile work environment claim for entirely different reasons, namely that Jenkins failed to show the conduct was unwelcome, severe, or pervasive. (Doc. 222, pp. 21-26). Thus, Jenkins' argument that the district court erred in requiring him to identify a comparator is without merit.

### E. Jenkins Failed to Show He Was Subjected to a Racially Hostile Work Environment.

To establish a hostile work environment claim, Jenkins must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic [i.e., his race] of the employee ...; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002). Determining whether the harassment was sufficiently severe or pervasive involves "both an objective and subjective component." *Id.* at 1276. In determining the objective element, a court looks to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 21.

The record is devoid of evidence of any racial harassment. Jenkins admits Birchfield never made any racist remarks. (Jenkins Depo. Doc 182-2 p. 146, 312:22-313:4). Jenkins alleges McDickinson spoke favorably about African-Americans in stating that she had a romantic preference for black men. (Jenkins Depo. Doc 182-2 p. 136, 275:8-17). As noted *supra*, Jenkins cannot point to any non-African-American employee who McDickinson or Birchfield treated more favorably. To the contrary, Jenkins alleged that McDickinson and Birchfield sexually pursued a white female employee, Brooke Smith, and fired her because she refused their sexual advances. (Doc. 194, p. 14, 28).[7]

Even if Jenkins could show the alleged conduct was based upon his race, he failed to demonstrate the conduct was unwelcome or sufficiently severe or pervasive. As noted *supra*, Jenkins, by his own admission, had a consensual relationship with McDickinson that he enjoyed. The only request to which Jenkins purportedly objected was to having sex in front of Birchfield. Even if Jenkins' contradictory testimony on this issue were considered, the request was made one

---

[7]Jenkins' allegations regarding Brooke Smith are based upon inadmissible hearsay. Nevertheless, Jenkins' allegations undermine his argument that it is "obvious" that McDickinson or Birchfield did not treat employees outside of his protected class in a similar fashion, and thus, that he has proven the alleged sexual advances were based on his "race and sex." (Jenkins App. Brief, p. 43).

time and thus was not sufficiently severe or pervasive as a matter of law. Moreover, Jenkins was never physically threatened or humiliated. Jenkins admitted that, despite this request and the alleged encounters with McDickinson, he always performed his job to "perfection." Thus, the district court correctly determined that Jenkins failed to show he was subjected to a racially hostile work environment.

### F. Koch Foods Is Not Liable for a Racially Hostile Work Environment.

Even if Jenkins had put forth sufficient evidence that he was subjected to unlawful racial harassment, he cannot show that Koch Foods is liable as he never reported the alleged conduct. An employer is not liable for sexual harassment if: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the employer] or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Despite his multiple acknowledgements of his receipt of Ala-Koch's harassment policy and reporting procedure, Jenkins did not make any complaints until after his termination. Even then, Jenkins admits he did not mention any purported harassment based on his race. (Jenkins Depo. 241:10-243:17). Thus, summary judgment is due to be affirmed in Koch Foods' favor on this alternate ground.

## III.    The District Court Correctly Granted Summary Judgment on Jenkins' Tort Claims.

### A.    Jenkins Has Waived His Tort Claims on Appeal.

"[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 681 (11th Cir. 2014). This is the approach taken by Jenkins. He makes no substantive arguments to support reversal of summary judgment on his state law tort claims and does not cite to any legal authority. As such, Jenkins has waived his state law tort claims.

### B.    Jenkins Failed to Create an Issue of Fact As To His Tort Claims.

#### 1.    Ala-Koch is not liable for Jenkins' state law claims.

The Eleventh Circuit has held that "[u]nder Alabama law, an employer is liable for the intentional torts of its agents if (1) the wrongful acts were committed in the scope of his employment; (2) the acts were in furtherance of the employer's interests; and (3) the employer participated in, authorized, or ratified the wrongful acts." *Stancombe v. New Process Steel LP*, 652 F. App'x 740, 741 (11th Cir. 2016) (citing *Potts v. BE & K Const. Co*., 604 So.2d 398, 400 (Ala. 1992)).

##### a.    The alleged conduct was outside of the scope of McDickinson's and Birchfield's employment with Ala-Koch.

"An employer may not be held vicariously liable, however, for sexual harassment by an employee when the employee acts only to 'satisf[y] his own

lustful desires,'" *Barlow v. Piggly Wiggly Alabama Distrib. Co*., No. 2:14-CV-971-WMA, 2015 WL 5770625, at *6 (N.D. Ala. Oct. 2, 2015) (citing *Ex parte Atmore Cmty. Hosp*., 719 So. 2d 1190, 1194-95 (Ala. 1998)). It is undisputed that any sexual conduct had nothing to do with McDickinson's or Birchfield's job duties. To the extent any such conduct occurred, it would have been to satisfy their lustful desires. Thus, Ala-Koch cannot be held responsible

### b.    *Ala-Koch did not ratify the alleged conduct.*

To show ratification, Jenkins  must present substantial evidence that Ala-Koch "(1) had actual knowledge of [their] tortious conduct and that the tortious conduct was directed at and visited upon [Jenkins]; (2) that based upon this knowledge, [Ala-Koch] knew, or should have known, that such conduct constituted ... a tort; and (3) that [Ala-Koch] failed to take "adequate steps" to remedy the situation." *Mills v. Wex-Tex Industs., Inc.*, 991 F. Supp. 1370, 1383 (M.D. Ala 1997)(citing *Mardis v. Robbins Tire & Rubber Co*., 669 So.2d 885, 889 (Ala. 1995); *Potts*, 604 So.2d at 400)). Jenkins did not report any alleged sexual harassment until he filed his EEOC Charge, months after his termination. Even Jenkins' discussion with Elrod in which he purportedly told Elrod that he had sexual relations with McDickinson occurred after Jenkins' termination. Ala-Koch could not take any further steps to remedy the situation as Jenkins' employment ended and any purported harassment had ceased. By the time Jenkins filed his

EEOC Charge, McDickinson had already resigned. *Joyner v. AAA Cooper Transp*, 477 So. 2d 364, 365 (Ala. 1985) (finding no employer liability where conduct did not recur after employee reported incident and employer counseled harasser).

### 2.    Jenkins' negligent and/or wanton supervision, training, and retention claims fail as a matter of law.

To state a claim for negligent or wanton hiring, supervision, training or retention against Ala-Koch, Jenkins must assert factual allegations sufficient to infer: (1) it knew or should have known of the employee's incompetence; (2) the incompetency at issue and the failure of Ala-Koch to prevent the incompetency through supervision was the proximate cause of the plaintiff's injury; and (3) the tort committed by the Ala-Koch employees, and not prevented by it due to negligent supervision, was a common-law, Alabama tort. *Stevenson v. Precision Standard, Inc*., 762 So. 2d 820, 824 (Ala. 1999). Wantonness is the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998).

### a.    Because Jenkins' underlying tort claims fail, his negligence and wantonness claims also fail.

"[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct [based on common law torts] of the defendant's

agents." *Univ. Fed. Credit Union v. Grayson,* 878 So. 2d 280, 291 (Ala. 2003); *Stevenson,* 762 So. 2d. at 825. Thus, if the underlying claim is dismissed, the negligent hiring, training, supervision and retention claim cannot succeed. *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008). No genuine issue of material fact exists as to any of Jenkins's underlying tort claims; thus his negligence and wantonness claims likewise fail.

### b. *Ala-Koch's harassment training defeats Jenkins' claims.*

This Circuit has held that when an employer provides periodic training on its anti-harassment policies, "no reasonable jury could find that [the employer] negligently or wantonly trained, supervised, or retained [the purported harasser]" under Alabama law. *Speigner v. Shoal Creek Drummond Mine*, 402 F. App'x 428, 433 (11th Cir. 2010). Moreover, "[i]mplicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury." *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010). It is undisputed McDickinson and Birchfield received annual training on anti-harassment policies. Even if there were any deficiencies in the training, which there were not, there is no substantial evidence that shows a causal link between Jenkins' alleged injuries and Ala-Koch's training. *Johnson v. Brunswick Riverview Club, Inc*., 39 So.3d 132, 140 (Ala. 2009) internal citations

omitted) (holding that because negligent supervision is a negligence-based claim, "a plaintiff pursuing a claim of negligent ... supervision of employees must establish that the employees' incompetency was the proximate cause of the alleged injury").

### c. *Jenkins cannot show Ala-Koch ratified the alleged conduct.*

To establish a negligent supervision and retention claim, a plaintiff must show that the employer: "(1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation." *Lowe v. Cardinal Health Inc*., 61 F. Su 3d 1228, 1242–43 (N.D. Ala. 2014) (quoting *Stevenson*, 762 So.2d at 824) (quoting in turn *Potts*, 604 So.2d at 400)). Where, as here, an employee delays in reporting alleged harassment and the employer promptly investigates after a report is made, negligent training and retention claims fails as a matter of law. *Lowe*, 61 F. Sup 3d at 1243. "The key inquiry, under these circumstances, is whether the alleged sexual harassment continued after [the plaintiff's] complaint" and, where record evidence shows that it did not, summary judgment is due to be granted. *Id.*

Jenkins did not report the alleged harassment until June of 2016 when he

filed his EEOC Charge. Because Jenkins cannot show the harassing conduct continued after he reported it, summary judgment is due to be granted.

## IV.   Summary Judgement Should Be Affirmed for Koch On The Alternate Ground That It Was Not Jenkins' Employer.

### A.   Jenkins Abandoned His §1981 and Tort Claims Against Koch.

Jenkins only opposed summary judgment in favor of Koch on his Title VII claims. He argued that Koch and Ala-Koch are a joint employer or integrated enterprise "for purposes of Title VII," but did not oppose dismissal as to any other claims. (Doc. 193, p. 22). Summary judgment in Koch's favor is due to be affirmed on that alternate ground. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (holding that a state-law claim was effectively abandoned when a party failed to brief and argue the issue before the district court).

### B.   Jenkins Failed To Demonstrate Koch Was a Joint or Single Employer with Koch Foods of Alabama for Title VII Liability.

"A Title VII workplace discrimination claim can only be brought by an employee against his employer." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016); "Thus, in order to decide whether an entity is a qualified employer, [the Eleventh Circuit] has asked this basic question: 'who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim.'" *Peppers*, 835 F.3d at 1297 (quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999)); *Llampallas*, 163 F.3d at 1244-45

("Both [single and joint employer] theories concentrate on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based."). "In the absence of more significant operational entanglement, common ownership and de minimis coordination in hiring are insufficient bases to disregard the separate corporate forms… [for purposes of Title VII]." *Nesbit v. Gears Unlimited, Inc*., 347 F.3d 72, 89 (3d Cir. 2002). Moreover, "there is a strong presumption that a parent corporation is not the legal employer of its subsidiary's employees and thus, a parent company is ordinarily not liable for the discriminatory acts of its subsidiary." *Varner v. Video Indus. Servs*., 2012 U.S. Dist. LEXIS 196855, *24 (N.D. Ala. April 2, 2012)(citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)).

As for a single employer theory, there must be evidence of common management, interrelation between operations, centralized control of labor relationship, and common ownership. This Circuit has held there must be evidence the entities are "highly integrated with respect to ownership and operations." *McKenzie v. Davenport-Harris Funeral Home*, 834 f.2d 930, 933 (11th Cir. 1987). "[T]he 'control' required to meet the test of centralized control of labor relations is not potential control, but rather actual and active control of day-to-day labor practices." *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 727 (N.D. Ala. 1981) "[This factor] has traditionally been [deemed] most important, with courts refining their

analysis to the single question, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Schweitzer v. Advanced Telemarketing Corp*., 104 F.3d 761, 764 (5th Cir. 1997).

Jenkins identified Elrod and Lewis as proving common management. (Doc. 193, p. 18). Although Elrod held the job title of corporate director of human resources for Koch, Jenkins presented no evidence that Elrod was involved of the day-to-day management of Ala-Koch; only that he was involved in the hiring and firing of Ala-Koch human resource managers. (Doc. 193, p. 18). As for Lewis, it is undisputed he was employed by Koch Foods of Cumming, LLC. (Lewis Depo., Doc. 182-15, p. 12:20-14:14) (Q. And what is the name of the entity in which you're employed? A. Koch Foods of Cumming.).

Jenkins also presented no evidence of interrelatedness of operations such as "'(1) combined accounting records; (2) combined bank accounts; (3) combined lines of credits; (4) combined payroll preparation; (5) combined switchboards; (6) combined telephone numbers; and (7) combined offices.'" *Klein v. L-3 Commc'ns Corp*., No. 1:12-CV-956-MEF, 2013 WL 5913776, at *7 (M.D. Ala. Nov. 1, 2013) (quoting *Walker v. Boys and Girls Club of Am*., 38 F. Supp. 2d 1326, 1331 (M.D. Ala. 1999)). Jenkins relied upon two (2) shared policies (not between Koch and Ala-Koch but between Ala-Koch and other limited liability companies), Elrod's supervision of Ala-Koch's human resource managers, and Lewis's temporary

supervision of an Ala-Koch plant manager, fails to demonstrate active control of day-to-day labor practices.

Jenkins further failed to point to any evidence of Koch's involvement or control over his day-to-day employment. Jenkins was paid by Ala-Koch and supervised by Ala-Koch employees. There is no evidence that Koch was involved in the employment decisions upon which Jenkins bases his Title VII claims. Simply, Jenkins failed to present substantial evidence of interrelatedness of operations, common management, or centralized control of labor relationship. He merely established common ownership of the entities, which standing alone, is insufficient as a matter of law. *Lusk*, 129 F.3d at 778 (holding common ownership was insufficient to overcome the "strong presumption that a parent corporation is not the employer of its subsidiary's employees."). As such, summary judgment is due to be affirmed in Koch's favor on this alternate ground.

## CONCLUSION

According to Jenkins, he had a consensual relationship with McDickinson that he enjoyed. He believes his relationship with McDickinson ended when she became involved with Birchfield. He has no proof that either McDickinson or Birchfield were involved in his termination, but believes Birchfield wanted to get rid of him because he was upset that Jenkins was involved with McDickinson. In sum, Jenkins failed to present evidence to establish that he was a victim of sex or

race discrimination. He likewise failed to show he was subjected to tortious conduct for which Koch Foods can be held responsible. Therefore, the district court's summary judgment ruling should be affirmed.

> */s/ Rachel V. Barlotta*
> Rachel V. Barlotta (VAN042)
> Sharonda C. Fancher
> **Attorneys for Koch Foods of Alabama, LLC and Koch Foods, Inc.,**

**OF COUNSEL:**

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
1400 Shipt Tower
420 North 20th Street
Birmingham, Alabama  35203
(205) 244-3851 Telephone
(205) 488-3851 Facsimile

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32 of the Federal Rules of Appellate Procedure for briefs of appellees. This brief contains 12,992 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point type.

This the 15th of August, 2022.

*/s/ Rachel V. Barlotta*
OF COUNSEL

# CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing was served upon the following counsel of record by e-filing and/or by United States Mail, with postage prepaid and properly addressed on this the 15th day of August, 2022

> Charles E. Guerrier
> Alicia K. Haynes
> HAYNES & HAYNES, P.C.
> 1600 Woodmere Drive
> Birmingham, Alabama  35226
> (205) 879-0377
>
> Heather Leonard, P.C.
> 2105 Devereux Circle
> Suite 111
> Birmingham, Alabama  35243
> (205) 977-5421
>
> Cynthia Forman Wilkinson
> Wilkinson Law Firm PC
> 1717 3rd Avenue N., Suite A
> Birmingham, AL 35203
> 205-250-7866
> Fax: 205-250-7869
> Email: wilkinsonefile@wilkinsonfirm.net
>
> Marion Walker, Esquire
> FISHER PHILLIPS LLP
> 2100A South Bridge Parkway
> Ste. 650
> Birmingham, Alabama 35209
> Telephone: (205) 327-8534
> Facsimile: (205) 718-7607
> Email: mwalker@fisherphillips.com

Andrew J. Baer, *Pro Hac Vice*
FISHER PHILLIPS LLP
201 St. Charles Avenue
Suite 3710
New Orleans, LA 70170
Telephone (504) 522-3303
Facsimile (504) 529-3850
abaer@fisherphillips.com

*/s/ Rachel V. Barlotta*
OF COUNSEL