## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
## CASE NO. 22-10480

---

### IRISH JENKINS, Appellant,

### v.

### KOCH FOODS, INC., et al., Appellees.

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION
### Case No. 2:17-cv-364-RAH

---

### APPELLANT IRISH JENKINS' REPLY BRIEF

---

Charles E. Guerrier
Alicia K. Haynes
Co-Counsel for Appellant

Of Counsel:
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
(205) 879-0377
ceguerrier@haynes-haynes.com
akhaynes@haynes-haynes.com

Cynthia Wilkinson
WILKINSON LAW FIRM PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203

Heather Leonard
HEATHER LEONARD, PC
2105 Devereuz Circle, Suite 111
Birmingham, AL 35242
(205) 977-5421

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT
### No. 22-10480 Irish Jenkins v. Koch Foods Inc., et al.

Pursuant to Rule 26.1, Fed. R. App. Proc., 11th Circuit Rule 26.1-1, the undersigned counsel of record for the Appellant Irish Jenkins hereby certifies the following as a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal (including subsidiaries, conglomerates, affiliates, parent corporations, and any publically held corporation that owns 10% or more of a party's stock), and other identifiable legal entities related to a party that have an interest in this case.

**Magistrate Judge Jerusha T. Adams**;

**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.** – Counsel for Defendants-Appellees Koch Foods, Inc., and Koch Foods of Alabama, LLC;

**Andrew J. Baer** – Counsel for Defendants-Appellees Birchfield and McDickinson;

**Magistrate Court Judge David A. Baker**;

**Barlotta, Rachel V.** – Counsel for Defendants-Appellees Koch Foods, Inc., and Koch Foods of Alabama, LLC;

**Birchfield, David** – Defendant-Appellee;

**District Court Judge Andrew L. Brasher**;

**Magistrate Judge Wallace Capel, Jr.**;

C1 of 4

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT
No. 22-10480 Irish Jenkins v. Koch Foods Inc., et al.**

---

**Magistrate Judge Stephen Michael Doyle**;

**Edwards, Sonya** – Former Counsel for Plaintiff;

**Elrod, Bobby** – Employee of Defendants-Appellees Koch Foods, Inc., and/or Koch Foods of Alabama, LLC;

**Fancher, Sharonda Childs** – Counsel for Defendants-Appellees Koch Foods, Inc., and Koch Foods of Alabama, LLC;

**Fisher Phillips LLP** – Counsel for Defendants-Appellees Melissa McDickinson and David Birchfield;

**Goerdt, Corey Joseph Myers** – Counsel for Defendants-Appellees Melissa McDickinson and David Birchfield;

**Guerrier, Charles, E.** – Counsel for Plaintiff-Appellant;

**Haynes, Alicia K.** – Counsel for Plaintiff-Appellant;

**Haynes & Haynes, PC** – Counsel for Plaintiff-Appellant;

**Heather Leonard, PC** – Counsel for Plaintiff-Appellant;

**District Court Judge R. Austin Huffaker, Jr.**;

**Koch Foods of Alabama, LLC** (an Alabama corporation, wholly owned by Koch Foods, Inc.) – Defendant-Appellee;

**Harmon, Bart Gregory** – Counsel for Alabama Department of Corrections Legal Division, Movant in the District Court;

C2 of 4

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT
### No. 22-10480 Irish Jenkins v. Koch Foods Inc., et al.

---

**Jackson, Steven** – Witness;

**Karlson, Daisy Christina** – Counsel for Defendants-Appellees Koch Foods,Inc. and Koch Foods of Alabama, LLC;

**Koch Foods, Inc.** (a privately-held corporation) – Defendant-Appellee;

**Leonard, Heather Newsom** – Counsel for Plaintiff-Appellant;

**District Court Judge Emily C. Marks**;

*Reese, Annalese Herndon* – Counsel for Defendants-Appellees Melissa McDickinson and David Birchfield;

**Smith, Ashley Nicole**, Miller Smith, LLC – Counsel for Steven Jackson;

**Stewart, Joseph Gordon, Jr.** – Counsel for Alabama Department of Corrections Legal Division, Movant in the District Court;

**District Court Judge Myron H. Thompson**;

**Walker, Marion F.** – Counsel for Defendants-Appellees Melissa McDickinson and David Birchfield;

**Wilkinson, Cynthia Forman** – Counsel for Plaintiff-Appellant;

**Wilkinson Law Firm PC** – Counsel for Plaintiff-Appellant

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**
**No. 22-10480 Irish Jenkins v. Koch Foods Inc., et al.**

Pursuant to Fed. R. App. P. 26.1, counsel also makes the following disclosures:

1.     For non-governmental corporate parties, please list all parent corporations: **Koch Foods of Alabama, LLC** and **Koch Foods, LLC** are wholly-owned by **Koch Foods, Inc.**

2.     For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock: **NONE.**

Respectfully submitted,

*/s/ Charles E. Guerrier*
Charles E. Guerrier
Attorney for Appellant Irish Jenkins

C4 of 4

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
     AND CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . C1 of 4

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

    Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

    Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

    Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

    Other Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

I.    Summary Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    Jenkins Is Not Pressing Claims Against Koch Foods, Inc.. . . . . . . . . . . . .  5

III.    The Harassment Of Jenkins Was Based On His Sex And His Race. . . . . . .  5

    A.    The "But for" Standard Under Both Title VII and §1981... . . . . . . . .  5

    B.    McDickinson Was Motivated By Jenkins's Race And/Or Sex. . . . . .  7

        1.    McDickinson's Motivations.. . . . . . . . . . . . . . . . . . . . . . . . . . .  7

        2.    The Harassment Was Unwelcome... . . . . . . . . . . . . . . . . . . . . .  8

        3.    The Conduct Was Severe Or Pervasive.. . . . . . . . . . . . . . . . .  10

    C.    Jenkins Experienced Tangible Employment Actions As A
        Result Of McDickinson's Harassment.. . . . . . . . . . . . . . . . . . . . . . .  12

i

III.    Koch Foods of Alabama, LLC, Cannot Establish The
        *Faragher/Ellerth* Affirmative Defense.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.     Jenkins's Tort Claims Against McDickinson.. . . . . . . . . . . . . . . . . . . . . . 22
        A.    There Are Material Issues Of Fact In Dispute Concerning
              Each Tort.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        B.    Jenkins Has Not Waived His Tort Claims.. . . . . . . . . . . . . . . . . . . 26

V.      Koch Foods Can Be Held Liable For The Torts.. . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ii

## TABLE OF CITATIONS

**Cases:**

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bostock v. Clayton County*, __ U.S. __, 140 S.Ct. 1731 (2020). . . . . . . . . . 6, 16, 17

*Burlington Indus., Inc.  v. Ellerth*, 524 U.S. 742 (1998). . . . . . . . . . . . . . . 1, 18, 19

*Carrero v. New York City Housing Authority*, 890 F.2d 569 (2nd Cir. 1989). . . . . . 2

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, __U.S. __, 140 S.Ct. 1009 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cooke v. Stefani Management Services, Inc.*, 250 F.3d 564 (7th Cir. 2001). . . . . . . 9

*Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979 (8th Cir. 2012). . . . . . . . . . . 8

*Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979 (8th Cir. 2012), *cert. denied* 568 U.S. 1160 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*de la Croix de Lafayette v. de la Croix de Lafayette*, 15 Fam.L.Rep. (BNA) 1501 (D.C. Super. Ct. Aug. 14, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dinkins v. Charoen Pokphand USA, Inc.*, 133 F.Supp.2d 1254 (M.D. Ala. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Duckett v. State*, 37 Ala. App. 640, 73 So.3d 773 (Ala. Ct. App. 1954). . . . . . . . . 4

*Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 14

*Ex parte Abbott Laboratories*, 342 So.3d 186 (Ala. 2021). . . . . . . . . . . . . . . . . . . 4

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). . . . . . . . . . . . . . . . . 2, 18, 19

*Feliciano v. City of Miami Beach*, 707 F.3d 1244 (11th Cir. 2013). . . . . . . . . . . . 12

iii

*Frederick v. Sprint/United Management Co.*, 246 F.3d 1305 (11th Cir. 2001). . . 19

*Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gray v. Koch Foods, Inc.*, 580 F.Supp.3d 1087 (M.D. Ala. 2022) . . . . . . . . . . . 17

*Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316
(11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). . . . . . . . . . . . . . . . . . . . . 2, 11

*Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). . . . . . . . . . . . . . . . 1, 16

*Hitchcock v. Sec'y, Fla. Dep't of Corr.*, 745 F.3d 476 (11th Cir. 2014). . . . . . . . . 14

*Holman v. Indiana*, 211 F.3d 399 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Johnson v. Booker T. Washington Broadcasting Service, Inc.*,
234 F.3d 501 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Johnson v. Wainwright*, 806 F.2d 1479 (11th Cir. 1986).. . . . . . . . . . . . . . . . . . . . 18

*Joyner v. AAA Cooper Transp.*, 477 So.2d 364 (Ala. 1985).. . . . . . . . . . . . . . . . . . . . . 28

*Kelliher v. Veneman*, 313 F.3d 1270 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 28

*Laughlin v. Breaux*, 515 So.2d 480 (La.  App. 2st Cir. 1987). . . . . . . . . . . . . . . . 4

*Lehigh Portland Cement Co. v. Donaldson*, 231 Ala. 242,
164 So. 97 (Ala. 1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) . . . . . . . . . 15

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183
(11th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lockett v. Choice Hotels Int'l*, 315 Fed. App'x 862 (11th Cir. 2009). . . . . . . . 10, 11

*Lord v. Shaw*, 665 P.2d 1288 (Utah 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290 (11th Cir. 2000). . . . . . . . . 21

*Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885 (Ala. 1995). . . . . . . . . . . 28

*Marks v. United States*, 430 U.S. 188 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) . . . . . . . . . . . . . . . 14, 15

*Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57 (1986). . . . . . . . . . . . . . . . . 1, 2

*Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251
(11th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). . . 10, 11, 15, 16

*Orr v. Russell Forest Prod., Inc.*, No. 5:19-CV-01173-HNJ,
2021 WL 5216884 (N.D. Ala. July 14, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Potts v. BE & K Const. Co.*, 604 So.2d 398 (Ala. 1992). . . . . . . . . . . . . . . . . . . 28

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010). . . . . 1, 10

*Shields v. Fort James Corp.*, 305 F.3d 1280 (11th Cir. 2002). . . . . . . . . . . . . . . . 5

*Singh v. U.S. Att'y Gen.*, 563 F.3d 1275 (11th Cir. 2009). . . . . . . . . . . . . . . . . . 28

*Smelter v. Southern Home Care Services, Inc.*, 904 F.3d 1276
(11th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stancombe v. New Process Steel LP*, 652 Fed. App'x 740 (11th Cir. 2016). . . . . . 28

*Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318 (11th Cir. 1998). . . . . . . . . . . 6

*Taylor v. Metzger*, 152 J.J. 490, 706 A.2d 685 (1998). . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) . . . . . . . . 19

*United States v. Beck*, 1:19-CR-0184-MHC-JSA,
2019 WL 7841917 (N.D. Ga. Nov. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265
(1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes:**

42 U.S.C. § 2000e *et seq.*(Title VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Rules:**

11th Circuit Rule 26.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1 of 4

Rule 26.1, Fed. R. App. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1 of 4

Rule 32(a)(5), Fed. R. App. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 32(a)(6), Fed. R. App. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 32(a)(7)(B)(1), Fed. R. App. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 32(f), Fed. R. App. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Other Authorities:**

Black's Law Dictionary (10th ed. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lee, Harper, TO KILL A MOCKINGBIRD, HarperCollins 1960 . . . . . . . . . . . . . . . . 24

## ARGUMENT

### I.    Summary Introduction.

It has been forty years since the Eleventh Circuit decided *Henson v. City of Dundee*, 682 F.2d 897, 902 (11ᵗʰ Cir. 1982), but the fundamental principle announced there has never changed: no person should be subjected to unwelcome sexual advances in return for the privilege of being allowed to work and make a living. This principle is particularly compelling when the person making the unwelcome advances is the head of Human Resources, whose job is to insure that the employees are provided a workplace free from harassment.

The treatment Jenkins experienced at Koch Foods of Alabama, LLC, was "sufficiently severe or pervasive 'to alter the conditions of [his] employment and create an abusive working environment.'" *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson*). This is a subjective question which turns largely on credibility determinations committed to the trier of fact. *Vinson*, 477 U.S. at 68; *see also Dinkins v. Charoen Pokphand USA, Inc.*, 133 F.Supp.2d 1254, 1262 (M.D. Ala. 2001).

Hostile work environment claims often involve conduct that is either severe, pervasive or both. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11ᵗʰ Cir. 2010) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998)). An

1

employee need not subject himself to an extended period of demeaning provocations before seeking relief under Title VII. *Carrero v. New York City Housing Authority*, 890 F.2d 569, 578 (2nd Cir. 1989). One act of harassment, if sufficiently serious, can change the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

"Welcomeness" is a credibility question for the fact-finder. *Vinson*, 477 U.S. at 688. "[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against [his] will, is not a defense to a sexual harassment suit brought under Title VII. The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Id.*

Requiring an employee to engage in unwanted sex acts is one of the most pernicious and oppressive forms of sexual harassment that can occur in the workplace. Such conduct is "appalling" and "especially egregious." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Where a superior encourages a sexual relationship with a subordinate and the employee acquiesces, a reasonable inference arises that the subordinate's acquiescence may have stemmed from motives or circumstances unrelated to attraction or desire, such as intimidation, fear of reprisal, or an attempt to secure employment-related benefits or advantages. *Orr v. Russell Forest Prod., Inc.*, No. 5:19-CV-01173-HNJ, 2021 WL 5216884, at *30, n. 53 (N.D.

2

Ala. July 14, 2021).

The District Court misapplied these legal principles in this case. The evidence is sufficient for a jury to conclude that McDickinson had a sexual interest in Jenkins; she used her position as HR manager to satisfy that interest and to manipulate Jenkins's work schedule and assignments; and she lured him into a remote area of the plant where, against his will, she coerced him into letting her perform an unwelcome sexual act on him. That act, standing alone, is sufficiently severe to meet the Title VII standard for a hostile work environment. But the harassment continue for months.

It is irrelevant that, at some later time, Jenkins may have entered into what he called a "consensual" relationship. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1188 (11th Cir. 2001) (a prior intimate relationship is not determinative of a sexual harassment claim); *see also Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 274-75 (1st Cir. 2014); *Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979, 985 (8th Cir. 2012), *cert. denied* 568 U.S. 1160 (2013). There is no evidence that what McDickinson did to Jenkins in the summer and fall of 2015 was "welcome" as that word is used in the context of Title VII or tort law.

The District Court similarly misapplied Alabama tort law. Torts are not

3

continuing acts.[1]  They cannot be united in the same count.  *Lehigh Portland Cement Co. v. Donaldson*, 231 Ala. 242, 246, 164 So. 97, 100 (Ala. 1935).  Even when incidents of assault and battery are repeated, each incident is separate, and gives rise to a separate cause of action.  *Cf. Laughlin v. Breaux*, 515 So.2d 480 (La.  App. 2st Cir. 1987); *Lord v. Shaw*, 665 P.2d 1288, 1289-1290 (Utah 1983); *de la Croix de Lafayette v. de la Croix de Lafayette*, 15 Fam.L.Rep. (BNA) 1501, 1502 (D.C. Super. Ct. Aug. 14, 1989).

McDickinson's sexual advances and badgering intruded on Jenkins's privacy, subjected him to assault and battery, and comprised the tort of outrage.  Each of these torts are base, upon McDickinson's unwelcome physical touching of Jenkins and her requests for sexual activity.  Jenkins testified that this touching occurred on a number of occasions, in different locations, and under varying circumstances. Yet each alleged touching stands on its own.  Consent given as to a touching on one occasion is not consent as to touching on all occasions. Consent obtained after the fact, or even while a battery is being committed, is not a defense to the initial act.  *Cf. Duckett v. State*, 37 Ala. App. 640, 642, 73 So.3d 773, 774 (Ala. Ct. App. 1954).

The District Court concluded that Jenkins's subsequent "consensual"

---

[1]While Alabama has recognized the existence of "continuous torts," such torts are limited in their scope.  *Ex parte Abbott Laboratories*, 342 So.3d 186, 196 (Ala. 2021).

interactions with McDickinson negated the possibility of him prevailing on any tort claim regardless when it was committed. That was error.

## II. Jenkins Is Not Pressing Claims Against Koch Foods, Inc.

Jenkins sued both Koch Foods of Alabama, LLC, (his employer) and Koch Foods, Inc., (the parent of Koch Foods of Alabama). The Koch Defendants successfully argued in the District Court that the two entities were not joint employers and did not operate as an integrated enterprise.  (Doc. 193; Doc. 222:31.) More particularly, Koch Foods, Inc., argued that "there is no evidence that Koch [Foods, Inc.,] played any role in any of the alleged conduct about which Jenkins complains." (Doc. 193:11.) The District Court agreed and granted Koch Foods, Inc.'s motion. Jenkins has not appealed that determination nor raised it as an issue on Appeal.

Consequently, Jenkins's reference in his briefs to "Koch Foods" is to Koch Foods of Alabama, LLC, unless otherwise noted.

## III. The Harassment Of Jenkins Was Based On His Sex And His Race.

### A. The "But for" Standard Under Both Title VII and §1981.

Both Title VII and 42 U.S.C. §1981 support allegations of a racially hostile work environment.  *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).  Both statutes have the same requirements of proof and use the same analytical

framework. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11ᵗʰ Cir. 1998). While Title VII does impose an administrative process which must be exhausted prior to suit, §1981 contains no such requirement.[2] *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11ᵗʰ Cir. 1998).

As noted in Jenkins's opening brief, courts do not use *McDonnell Douglas* when determining whether a set of facts constitutes harassment. *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 511 (11ᵗʰ Cir. 2000). Instead, the court uses a "but for" causation standard. *Gowski v. Peake*, 682 F.3d 1299, 1313 (11ᵗʰ Cir. 2012). The Supreme Court has explained that the "but for" test is the default standard for all federal antidiscrimination laws. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, __U.S. __, 140 S.Ct. 1009, 1014 (2020).

The "but-for" standard can be "sweeping." "Often, events have multiple but-for causes. *Bostock v. Clayton County*, __ U.S. __, 140 S.Ct. 1731, 1739 (2020). "So long as plaintiff's [protected characteristic] was one but-for cause of that decision, that is enough to trigger the law." *Id.* The protected characteristic "need not be the sole or primary cause of the employer's adverse action" in order to establish "but-for"

---

[2]Koch Foods argues, in part, that Jenkins's race claim is defective because he failed to exhaust his administrative remedies under Title VII. (Koch Foods Brief:44-45.) Jenkins conceded that his Title VII charge did not make an allegation of race discrimination. *Id.* However, there is no administrative exhaustion requirement for claims brought pursuant to §1981.

causation. *Id.* at 1744.   And "it has no significance . . . if another factor . . . might also be at work, or even play a more important role in the employer's decision." *Id.* "If the employer intentionally relies in part on an individual employee's [protected characteristic]" when taking an action, a statutory violation occurs. *Id.* at 1741.

Under this standard, the questions in this case are whether Jenkins would have been subjected to a hostile environment or terminated "but for" his race, his sex, or both.

These are not "intersectional," "race plus," or "mixed motive" questions, as Koch Foods suggests.  (Koch Foods Brief:43-44[hereinafter KFB:#].)  These are two separate, but related, claims, one under Title VII and the other under §1981.

## B.   McDickinson Was Motivated By Jenkins's Race And/Or Sex.

### 1.   McDickinson's Motivations.

As discussed more thoroughly in Jenkins's Opening Brief (Jenkins Brief:43-44), there is evidence that McDickinson's harassment of Jenkins was motivated by both his race and his sex.  McDickinson pursued him relentlessly to engage in sexual conduct with her.  But sex was not the only reason she stalked Jenkins.  She told Jenkins she had a preference for "black guys," telling him they were "different, better, and bigger."  From this evidence, a reasonable jury could conclude that, but for his

7

race, McDickinson would not have pursued him.  The jury could also conclude that, but for his sex, McDickinson would not have pursued him.  Both made a difference in how he was treated and can be "but for" causes. Both are unlawful.

### 2.    The Harassment Was Unwelcome.

Koch Foods dismisses the cases cited by Jenkins to support his theory of unwelcomeness on the grounds that they are distinguishable and not precedential. (KFB:24-25.)  Regardless, they are persuasive, particularly when the issue is how facts could be viewed by a jury. *Cf United States v. Beck*, 1:19-CR-0184-MHC-JSA, 2019 WL 7841917, at *6 (N.D. Ga. Nov. 18, 2019).

While *Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979 (8th Cir. 2012), does involve a question of qualified immunity, the facts are not as distinguishable as Koch Foods claims. As with McDickinson, Crutcher-Sanchez's harasser, her boss, began his  pursuit soon after she started work.  He met her at a bar where she was drinking with friends. McDickinson did the same. Afterwards he drove her to his house, an isolated place and assaulted her. When she protested, the harasser told her not to worry.  He was her boss.  After that first encounter they had sex at least ten times.  Crutcher-Sanchez, herself, initiated some of the contacts.  She spent Christmas with the harasser.  Nevertheless, the court concluded that this evidence was sufficient to create a question of "welcomeness" for the jury.  *Id.* at 985.

8

This is not unlike what happened to Jenkins. He was stalked by McDickinson. She lured him to a remote part of the chicken plant and seduced him, telling him that she would protect him. Fearful of losing his job, he acceded to her demands. As in *Crucher-Sanchez*, whether the harassment of Jenkins was welcome turns on credibility and, therefore, is a question that must be left to a jury.

Similarly, the Court in *Cooke v. Stefani Management Services, Inc.*, 250 F.3d 564 (7th Cir. 2001), recognized that the balance of power that operates in the relationship between a supervisor, like McDickinson, and an employee, like Jenkins, impacts this issue. *Id.* at 567. This difference in status can reasonably explain why an employee would socialize with a supervisor who has engaged in offensive and unwelcome conduct in the workplace. Consequently, the issue of welcomeness should have been left to the jury. *Id.*

Finally, Koch Foods attempts to make much of the fact that Jenkins denied having a relationship with McDickinson when asked about it. (KFB:26.) Yet McDickinson, to this day, denies that there was any relationship. If the relationship was truly consensual, as both McDickinson and Koch Foods argue, why would McDickinson deny it existed?

It will be for a jury to decide whether a relationship existed and, if it did, whether it was welcome. McDickinson's own denial will be part of the evidence to

9

be considered.  The District Court erred by finding that any alleged relationship was "welcome."

### 3.   The Conduct Was Severe Or Pervasive.

Because Title VII is not a civility code, not all sexual conduct in the workplace will constitute discrimination.  *Reeves*, 594 F.3d at 807. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998).

Koch Foods, relying on *Lockett v. Choice Hotels Int'l*, 315 Fed. App'x 862 (11th Cir. 2009), argues that the conduct described by Jenkins fails to meet the severe or pervasive standard.  (KFB:26-27.)  This argument fails.

*Lockett* involved harassment by a co-worker, not a supervisor.  *Id.* at 863. The involvement of a supervisor in the conduct is an important factor.  *Faragher*, 524 U.S. at 803 (favorably citing *Taylor v. Metzger*, 152 J.J. 490, 505, 706 A.2d 685, 692 (1998) for the principle that a supervisor's conduct may have a greater impact than that of colleagues at the same level).

The fact that harassment must be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of

cases. *See Harris*, 510 U.S. at 22 ("Title VII comes into play before the harassing conduct leads to a nervous breakdown"; the "appalling conduct" alleged in prior cases should not be taken to "mark the boundary of what is actionable").

The conduct Jenkins describes in his Opening Brief cannot reasonably be characterized as simple teasing, offhand comments, or isolated incidents. *Lockett*, 315 Fed. App'x at 865. It is not "ordinary socializing in the workplace." *Oncale*, 523 U.S. at 81.

The fact that Jenkins refused some of the requests from McDickinson and Birchfield does not mean that his submissions to other requests were not unwelcome or severe. While the impact of workplace behavior often depends on a constellation of surrounding circumstances, *Oncale*, 523 U.S. at 82, that does not mean the courts should discount egregious individual acts of harassment that are part of those circumstances.

Finally, Koch Foods argues that Jenkins's claim about Birchfield should be ignored as "totally implausible" because it id not interfere with his job. (KFB:27.) There is nothing "implausible"about Jenkins's claim. "[A] plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possible been observed or events that are contrary to the

11

laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11ᵗʰ Cir. 2013). Jenkins testified that during a meeting with Birchfield and McDickinson, McDickinson repeated her request that Birchfield be permitted to watch while they had sex. Jenkins refused. There is nothing implausible about that claim.

Viewing the evidence, both separately and in its entirety, a reasonable jury could conclude that Jenkins was subject to conduct that was both severe and pervasive.

### C.    Jenkins Experienced Tangible Employment Actions As A Result Of McDickinson's Harassment.

Koch Foods makes a number of arguments to support its claim that Jenkins did not suffer any tangible job detriment as a result of the harassment he experienced. While a jury could be persuaded to agree with Koch Foods, it would have to view the evidence in favor of Koch Foods, a standard which does not apply at summary judgment. There are material issues of fact which, when viewed in a light most favorable to Jenkins, support the conclusion that McDickinson's harassment, and his later refusal to accede to her additional demands, produced a tangible impact on his employment.

The most immediate impact was McDickinson's frequent intercessions on behalf of Jenkins. She instructed Jenkins that he should take his smoke breaks with

12

her, at a location away from his department.   (Jenkins Opening Brief:6 [herinafter JOB:#].)  She told Jenkins he was "protected" and he did not have anything to worry about as long as she could "deal" with him.  *Id.* at 12.  She excused attendance points he should have received, even though he informed her that he objected.  *Id.*  When he was suspended for three days in December 2015 for a points violation, Birchfield and McDickinson retroactively reduced his points balance, paid him for the time off, and told he that he was "in" with them.  *Id.*  These are all tangible ways in which Jenkins's work environment changed after the sexual harassment started.

In addition, Jenkins was suspended, and then terminated, after he rejected McDickinson's proposal that he permit Birchfield to be present during sex with her. Koch Foods claims that there is no evidence that either Birchfield or McDickinson "made the decision" to terminate Jenkins.  However, a review of all of the evidence demonstrates that there is genuine dispute of fact as to who made that decision.  As discussed in JOB:21-25, no one has taken responsibility for that decision. Shaw was not involved in the decision to suspend Jenkins.  (JOB:21.) While Koch Foods claims Cortes admitted she made the decision to suspend Jenkins (KFB:16), Cortes testified the decision to terminate Jenkins came from Birchfield.  (JOB:22.)   McDickinson conducted the investigation that led to Jenkins's termination.  *Id.*

Based upon this disputed evidence, a reasonable jury could conclude that both

13

Birchfield and McDickinson were involved in the decision to terminate Jenkins after he refused their request that he permit Birchfield watch while he had sex with McDickinson.

### D.    There Is No Exception For Sexual Predators.

Koch Foods argues that Jenkins cannot prevail on his claim because he cannot show "similarly situated persons not of his sex were treated differently or better" (KFB:38), and that "bi-sexual harassing conduct" enjoys immunity.   Neither argument is correct.

Koch Foods relies upon a footnote in Judge Edmondson's concurrence in *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1254 n. 3 (11th Cir. 1999) for the proposition that every claim of sexual harassment requires evidence of comparators.   This argument fails for two reasons.

First, while the Circuit is bound to follow a prior panel or *en banc* holding unless that holding has been overruled or undermined, *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1256 (11th Cir. 2014), that principle does not apply to dicta. "[D]icta is not binding on anyone for any purpose."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

Admittedly, an alternative holding is not dicta. *Hitchcock v. Sec'y, Fla. Dep't of Corr.*, 745 F.3d 476, 484 n.3 (11th Cir. 2014).  But the decision in *Mendoza* did

14

not include an alternative holding concerning comparators. The decision in *Mendoza* was based solely on the plaintiff's inability to meet the severe or pervasive standard. *Mendoza*, 195 F.3d at 1247. The only mention of comparators in *Mendoza* is in concurring opinions, which, being dicta[3], creates no controlling law. *Marks v. United States*, 430 U.S. 188, 193 (1977).

Second, the identification of similarly situated comparators is a concept relevant to the *McDonnell Douglas* framework. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019) (*en banc*). But that framework is not controlling in a hostile work environment claim. *Johnson*, 234 F.3d at 511.

Koch Foods's approach also clashes with the Supreme Court's opinion in *Oncale*. The workplace in *Oncale* had eight employees, all male. Nevertheless, the Court concluded that it was possible to find sexual harassment/discrimination in that environment.[4] *Oncale*, 523 U.S. at 79. If discrimination is possible in a single-sex workplace, it should be possible in a work environment with an equal opportunity harasser. *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (Evans, J. concurring).

---

[3] "Obiter dictum" is: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." Black's Law Dictionary (10th ed. 2014).

[4] Absent from the Court's discussion is any mention of *McDonnell Douglas*.

15

Koch Foods argues that Jenkins cannot prevail because *Henson* establishes that "no cause of action exists under Title VII for bi-sexual harassing conduct because men and women are treated by the harasser in the same manner." (KFB:39-42.) Koch Foods claims that the Supreme Court has reaffirmed that holding. (KFB:39). This argument, too, fails.

*Henson* cannot carry that much water. *Henson* did not involve a bi-sexual harasser or bi-sexual harassing conduct. The issue in *Henson* was whether a plaintiff must prove a tangible job detriment in order to establish a hostile work environment claim under Title VII. The Circuit held that "the creation of an offensive or hostile work environment due to sexual harassment can violate Title VII irrespective of whether the complainant suffers tangible job detriment." *Henson*, 682 F.2d at 901. The hypothetical bi-sexual harasser was not an issue in *Henson*, and this Court is not constrained by that case. Instead, this Court must be guided by the more recent Supreme Court precedent on this issue. That precedent includes *Oncale*, discussed above, and *Bostock*.

The Court in *Bostock* addressed the "equal opportunity violator."

> Nor is it a defense for an employer to say it discriminates against both men and women because of sex. This statute works to protect individuals of both sexes from discrimination and it does so equally. So an employer who fires a woman, Hannah, because she is insufficiently feminine and also fires a man, Bob, for being insufficiently masculine

16

may treat men and women as groups more or less equally. But in both cases, the employer fires an individual in part because of sex. Instead of avoiding Title VII exposure, this employer doubles it.

*Bostock*, 140 S.Ct. at 1741.

The message could not be more clear: the employer who sexually harasses a man and a woman does not eliminate exposure under Title VII but doubles it. To the extent *Henson* suggests or intimates some other result, that result was rejected by the Supreme Court in *Bostock*.

Many courts have directly addressed, and patently rejected, the "equal opportunity harasser" argument. *See, Gray v. Koch Foods, Inc.*, 580 F.Supp.3d 1087, 1109 (M.D. Ala. 2022) (rejecting the argument when presented in another case involving McDickinson and Birchfield).

The Supreme Court's decision in *Bostock* should now put this argument to rest. When an employer, acting through its Human Resource professionals, makes sexual advances to a subordinate employee, male or female, cisgendered or transgendered, homosexual or straight, that employer necessarily and intentionally discriminates against that individual because of sex.

## III.   Koch Foods of Alabama, LLC, Cannot Establish The *Faragher/Ellerth* Affirmative Defense.

If harassment is by a supervisor and results in a tangible employment action,

17

as is alleged here, then the presumption that the employer is vicariously liable is conclusive – the employer is not entitled to assert an affirmative defense. *Faragher*, 524 U.S. at 777. Moreover, the employer is liable for the entire course of conduct, not just the conduct resulting in the tangible action. *Ellerth*, 524 .S. at 765.

If no tangible employment action is involved, the employer can avoid liability by establishing, by a preponderance of the evidence, an affirmative defense. *Ellerth*, 524 U.S. at 763-64*; Faragher*, 524 U.S. at 807.

While Koch Foods makes a number of arguments as to why Jenkins cannot prevail on his sex hostile environment claim, *i.e.* the conduct was welcome, the conduct was neither severe nor pervasive, lack of a causal relationship between the termination and sex or gender, and lack of pretext (Appellee Koch Foods' Brief:22-42), Koch Foods does not assert the *Faragher/Ellerth* affirmative defense to that claim. Koch Foods's failure to raise the affirmative defense in response to Jenkins's sex discrimination claim operates as a waiver of such a defense. *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012) (citing *Johnson v. Wainwright*, 806 F.2d 1479, 1481 n. 2 (11th Cir. 1986)).

Koch Foods has asserted the *Faragher/Ellerth* affirmative defense as to Jenkins's racially hostile work environment claim. (KFB:48.) But Koch Foods devotes less than one page to that defense. *Id.* Koch Foods claims that the defense

18

is established because "Jenkins did not make any complaints until after his termination." *Id.* This is not sufficient to remove this defense from the province of the jury.

The Supreme Court created the affirmative defense in *Faragher/Ellerth.* It has two necessary parts: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

As an affirmative defense, the burden rests upon the employer to prove all elements by a preponderance of the evidence. *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001). A party asserting an affirmative defense must demonstrate affirmatively that no reasonable jury could find against it on that defense. *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).

Koch Foods has not carried that heavy burden. While Koch Foods may have promulgated a policy concerning harassment in the workplace, that fact, alone, is not sufficient to prove the first element. There must be proof that the policy was effective in preventing harassment in the workplace. A reasonable jury could conclude, based

19

upon the evidence of record, that Koch Foods's policy was not effective.

Koch Foods's policy prohibits harassment in any form. (Doc. 182-1.) It includes conduct of a sexual nature. *Id.* The policy sets forth examples of the prohibited conduct, including sexual flirtations, propositions or other conduct of a sexual nature. *Id.* McDickinson, as the HR Manager for the facility where Jenkins worked, was certainly aware of Koch Foods's policies. However, she was confused about the policy on sexual harassment. When asked whether it would violate any Koch Foods policy if she engaged in any kind of sexual activity with Jenkins, she answered, "Yes." (Doc. 176-20:92:22-93:7.) Yet, when asked what policy that would violate, she answered "I don't know." (Doc. 176-20:93:8-12.) Nevertheless, she understood that she would have been terminated if she had engaged in a sexual relationship with Jenkins. (Doc. 176-20:93:13-21.)

While McDickinson denies having any sexual encounters with Jenkins, there is a genuine dispute as to that fact. Consequently, a reasonable jury, viewing the evidence in a light most favorable to Jenkins, could conclude that Koch Foods's policy was ineffective because it did not deter McDickinson, the person responsible for enforcing the policy, from making sexual advances towards Jenkins (as well as others).

The policy also has a defective reporting mechanism. The reporting mechanism

set out in the policy identifies the HR Manager (McDickinson) or the Complex HR Manager (Birchfield) as individuals to contact with any complaints. As both McDickinson and Birchfield are alleged to be responsible for the harassment, the mechanism is deficient. *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000).

While the policy does identify Bobby Elrod as an additional contact, Elrod is not a company representative. As Koch Foods proved in the District Court, and as it repeats in the Circuit, there is no evidence "that Elrod was involved of [sic] the day-to-day management of Ala-Koch human resources managers; only that he was involved in the hiring and firing of Ala-Koch human resource managers." (KFB:56.)

Further, when Elrod did learn about possible improper conduct on the part of McDickinson and Birchfield, his response was to refer the matter back to Birchfield. Even after Jenkins called Elrod to complain, Elrod took no independent action in response to Jenkins's claims other than to refer the matter back to the person who may have been involved in the harassment.

Finally, Jenkins may not have needed to report the harassment to anyone for Koch Foods for it to have actual notice, because Birchfield, the highest ranking HR officer of Koch Foods of Alabama, LLC, participated in making sexual advances to Jenkins and was aware of McDickinson's conduct and her insistence that Jenkins

permit Birchfield to watch while they had sex. This Circuit has held that a supervisor observing harassment and finding it funny could constitute actual notice to the employer[5] despite the plaintiff's failure to otherwise report the harassment pursuant to the company's harassment policy. *Smelter v. Southern Home Care Services, Inc.*, 904 F.3d 1276, 1287 (11th Cir. 2018).

The *Farager/Ellerth* defense is not a shibboleth, the mere recitation of which dictates a ruling in the employer's favor. It must be proved by a preponderance of the evidence. Koch Foods has not meet that burden and it is not entitled to judgment in its favor on the affirmative defense.

## IV.    Jenkins's Tort Claims Against McDickinson.

### A.    There Are Material Issues Of Fact In Dispute Concerning Each Tort.

Jenkins brought three Alabama tort claims against McDickinson: assault and battery, invasion of privacy, and outrage. Each of these claims was based upon Jenkins's testimony that McDickinson committed unwelcome sexual touchings, propositions, and advances. Each tort contains an element of unwelcomeness. Invasion of privacy involves the wrongful intrusion into one's private activities,

---

[5]As already discussed, Koch Foods, along with Koch Foods, Inc., established in the District Court that Koch Foods was Jenkins's employer, not Koch Foods, Inc. Consequently, it is irrelevant whether Koch Foods, Inc., was aware of McDickinson's or Birchfield's conduct in order to hold Koch Foods liable.

*Johnson v. Corporate Special Services, Inc.*, 602 So.2d 385 (Ala. 1992); egregious sexual harassment qualifies for the tort of outrage, *Henry v. Georgia-Pacific Corp.*, 720 So.2d 119, 121 (Ala. 1998); and offensive unwelcome sexual touching can establish assault and battery. *Ex parte Atmore Community Hosp.*, 719 So.2d 1190, 1193 (Ala. 1998).

McDickinson, in her motion for summary judgment, denies having sex with Jenkins at any time, consensual or otherwise, or engaging in any conduct that could amount to any of the alleged torts. (Doc. 177-1:4 fn. 2.) Jenkins, on the other hand, claims that McDickinson approached him and compelled him to engage in numerous sexual acts that were unwelcome and not consensual. (Doc. 194: 60-64.) According to Jenkins, McDickinson touched Jenkins inappropriately, performed fellatio on him, and had sexual intercourse with him at work. *Id.* Only later did his sexual relationship with McDickinson become what he described as "consensual."

McDickinson agrees that the evidence, when viewed in a light most favorable to Jenkins, supports the conclusion that "the first time McDickinson performed oral sex on [Jenkins] was when she came to his work area in the warehouse and asked him to go into the 'cage' and back to the filing cabinets. ... At the filing cabinets she was squatting and began to fondle [Jenkins'] penis outside of his clothes, then unzipped his pants, she sucked his penis, as he braced himself on the cabinets; he pushed away

23

concerned about his colleague working there; when he turned around, she began again until he had an orgasm and expelled in her mouth." (McDickinson Brief:19 [hereinafter MB:#].)

McDickinson claims that Jenkins welcomed this sexual encounter because he was capable of walking away but did not. (MB:20.) This conclusion, however, is not consistent with Jenkins's description of his reaction to McDickinson's conduct.

Jenkins testified McDickinson instructed him to meet her in the cage. The cage was a secluded locked enclosure. McDickinson had the key. (Doc. 182-2:369:19-21.) Individuals in the cage generally could not be seen by those outside. (Doc. 182-2:379:1-21.) Once in the cage McDickinson began making the sexual advances described above. Jenkins's testimony is that those advances were not welcome or invited. He explained that, as a person with a criminal record, he needed his job and wanted to keep it. (Doc. 182-2:120:19-121:2.) He testified that he was physically afraid when McDickinson would touch him. "I'm an ex-felon with a – excuse my choice of words, but a white female. I'm an ex-felon. ... I felt that, hell, if I didn't do what she wanted me to do, hell, what if she said I raped her or some shit like that. I just wanted to get everything over with at the time of every encounter."[6] (Doc. 182-

---

[6]History and literature include tragic examples of men of color being falsely accused of sexually offending white women. *E.g.,* Emmett Till; Tom Robinson (Lee, Harper, TO KILL A MOCKINGBIRD, HarperCollins 1960.

24

2:428:4-21.) "I didn't have anything. I needed my job, so I went through with it, man, to keep my job." (Doc. 182-2:120:14-16.)

Jenkins never approached or asked McDickinson to engage in any sexual conduct; it was always McDickinson who initiated the sexual interactions. (Doc. 182-2:129:2-4; 401:23; 403:4-5.) Whenever Jenkins told McDickinson that he did not want to deal with her advances, she responded by making certain he knew she was in charge and he could lose his job. (Doc. 182-2:179:1-180:1; 189:10-18; 122:5-14; 123:10-14.) She told him he was "untouchable" as long as she "dealt" with him. (Doc. 182-2:96:3-7.)

As discussed above, torts generally arise out of distinct acts and liability attaches to each tortious act. Each sexual encounter described by Jenkins was a potential tort. While the evidence may support the conclusion that he consented to some of those encounters, it does not compel the conclusion that every such encounter was consensual. And McDickinson, who denies any such encounters ever occurred, has not offered any evidence contradicting Jenkins's testimony as to how he felt during those events. A reasonable jury could conclude that the first encounter, in the cage, was not consensual; it could reach the same conclusion as to certain of the other encounters. If so, that jury could conclude that McDickinson committed the torts of assault and battery, invasion of privacy, and outrage. The District Court, in

25

it's decision, improperly resolved this factual dispute.  Its decision should be reversed.

### B.    Jenkins Has Not Waived His Tort Claims.

McDickinson argues that Jenkins failed to raise an argument in the district court that the sexual activity engaged in by McDickinson was not welcome. (MB:37.)  But the record does not support this claim. Jenkins filed a consolidated response to the motions for summary judgment in the District Court. (Doc. 194.) This response set forth all of the facts which support Jenkins's claims that some, if not all, of the sexual advances were unwelcome.  (Doc. 194:6-13.)  Jenkins also discussed each of the torts brought against McDickinson.  (Doc. 194:58-65.)  Jenkins argued that each tort was supported by McDickinson's unwelcome sexual conduct.  (Doc. 194:60; 62-63; 64.)  The District Court recognized this in its decision on summary judgment: "The assault and battery, invasion of privacy, and outrage claims are all based on the same conduct: Jenkins's sexual encounters with McDickinson that he now contends were unwelcome due to the power imbalance in the workplace." (Doc. 222:28.)

The District Court granted summary judgment on these claims for one reason and one reason only:  the relationship was consensual and welcome.  (Doc. 222:29.) The District Court reached this conclusion by aggregating the discrete events rather

26

than examining them one-by-one. For example, finding that Jenkins felt comfortable refusing some of McDickinson's requests, the Court failed to identify whether this "comfortableness" was in relation to the initial sexual encounter in the cage (where Jenkins testified he did not feel comfortable rejecting her advances) or in relation to subsequent sexual advances during the period there was an obstensible consensual relationship.

As to the state law claims, there was only one issue for appeal: Was the relationship between Jenkins and McDickinson at all times consensual and welcome. (Doc. 222:29.)

Jenkins devoted six pages to the facts surrounding the sexual encounters between Jenkins and McDickinson (JOB:7-12) and another six pages to the question of "welcomeness." (JOB:49-55.) These facts and the legal discussion relate not only to the question of "welcomeness" under Title VII and §1981 but the matter of "welcomeness" as it relates to the state law claims. The arguments advanced by Jenkins for overturning the District Court's judgment as to his state law claims is the same as that advanced for overturning the judgment on his Title VII/§1981 hostile environment claim. Consequently, Jenkins incorporated those arguments into his discussion of the state law torts. (JOB:55.)

This is not an instance where an appellant makes only a passing reference to

27

an issue in the summary of argument and makes no argument on the merits of that issue. *See Singh v. U.S. Att'y Gen.*, 563 F.3d 1275, 1278 (11th Cir. 2009); *Kelliher v. Veneman*, 313 F.3d 1270, 1274 n. 3 (11th Cir. 2002). Jenkins identified the issue of welcomeness in his opening brief and discussed it, both factually and legally, throughout his brief. There has been no abandonment of that issue on appeal.

## V.    Koch Foods Can Be Held Liable For The Torts.

An employer is liable for the intentional torts of its agents if (1) the wrongful acts were committed in the scope of his employment; (2) the acts were in furtherance of the employer's interests; or[7] (3) the employer participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Const. Co.*, 604 So.2d 398, 400 (Ala. 1992)).

The evidence is sufficient to support the ratification theory of liability. Birchfield, as the highest ranking HR office of Jenkins's employer, had actual knowledge of the conduct; as a trained HR official he knew or should have known that the conduct constituted a tort; and he not only failed to take adequate steps to remedy the situation, he actually participated in it. *Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala. 1995).

Because a jury could find that McDickinson committed torts in the workplace

---

[7]In *Stancombe v. New Process Steel LP*, 652 Fed. App'x 740, 741 (11th Cir. 2016), the Panel replaces "or" with "and," suggesting that all three elements must be proven in order to hold an employer vicariously liable. That is not the law. Liability can be based upon any one of the elements of proof. *Joyner v. AAA Cooper Transp.*, 477 So.2d 364 (Ala. 1985).

28

with the knowledge and support of Birchfield, her supervisor, Jenkins had adequately

supported his claim the negligent and/or wanton supervision, training, and retention.

## CONCLUSION

The District Court dismissed Jenkins's hostile work environment,

discrimination, and tort claims on the grounds that McDickinson's treatment of

Jenkins was consensual, and therefore welcome.  This was error as there are genuine

disputes of fact as to each of these claims.  The District Court's judgment granting

summary judgment on those claims should be reversed.

                                        Respectfully submitted,
                                        */s/ Charles E. Guerrier*
                                        Charles E. Guerrier
                                        Alicia K. Haynes
                                        Co-Counsel for Appellant Irish Jenkins

Of Counsel:

HAYNES & HAYNES, P.C.              Heather Leonard
1600 Woodmere Drive               HEATHER LEONARD, PC
Birmingham, AL 35226              2105 Devereuz Circle, Suite 111
(205) 879-0377                    Birmingham, AL 35242
ceguerrier@haynes-haynes.com      (205) 977-5421
akhaynes@haynes-haynes.com

Cynthia Wilkinson
WILKINSON LAW FIRM PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203

## CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B)(1), Fed. R. App. Proc., in that, excluding the parts of the document exempted by Rule 32(f), Fed. R. App. Proc., this brief contains 6,467 words.

I further certify this brief complies with the typeface requirements of Rule 32(a)(5), Fed. R. App. Proc., and the type-style requirements of Rule 32(a)(6), Fed. R. App. Proc., in that this document has been prepared using Wordperfect in 14-point font in Times New Roman.

*/s/ Charles E. Guerrier*
Charles E. Guerrier (ASB-5123-E76Y)
Attorney for Appellant Irish Jenkins

30

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the following:

Rachel V. Barlotta
Sharonda C. Fancher
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 North 20th Street, Suite 1400
Birmingham, AL 35203

Marion F. Walker
FISHER & PHILLIPS
2323 2nd Avenue North
Birmingham, AL 35203

 */s/ Charles E. Guerrier*
Charles E. Guerrier
Attorney for Appellant Irish Jenkins

31